JOINT SCHOOL DISTRICT NO. 10, CITY OF JEFFERSON, and others, Appellants, v. JEFFERSON EDUCATION ASSOCIATION, and another, Respondents.

*No. 76-129.   Argued February 28, 1977.—Decided May 17, 1977.*
(Also reported in 253 N.W.2d 536.)

For the appellant there were briefs by *James K. Ruhly,
G. Michael Scheurich* and *Melli, Shiels, Walker and*

*Pease, S. C.* and oral argument by *Mr. Ruhly,* all of Madison.

For the respondents there was a brief by *John S. Williamson, Jr.,* and *Goldberg, Previant & Uelmen, S. C.,* and oral argument by *Mr. Williamson,* all of Milwaukee.

ABRAHAMSON, J. The issue before the court on this appeal is whether to vacate the arbitrators' award, the principle contentions being that (1) the grievance was not arbitrable and therefore the arbitrators had no power to render the award and (2) the award is contrary to law and public policy. The circuit court confirmed the award. We affirm the order of the circuit court.

## FACTS

The facts are not in substantial dispute, although the parties draw different inferences therefrom.

For several years prior to March 15, 1975, Charles Kasprzak was employed as a teacher by Joint School District No. 10, City of Jefferson, et al. (hereinafter referred to as the School Board). As of March 15, 1975, he was represented by a teachers' union, the Jefferson Education Association (hereinafter referred to as the Association), with which the School Board had a collective bargaining agreement for 1973-1975.

On February 11, 1975, Charles Kasprzak received a letter from the principal at the school where Kasprzak was a teacher, which informed Kasprzak that the principal was planning to recommend to the Board of Education that Kasprzak's contract be renewed under probationary status for the 1975-1976 school year. On March 10, 1975, Kasprzak received a letter telling him of the Board's intention to send him a "probationary contract." On March 15, 1975, Kasprzak received his contract in

the mail, which was apparently satisfactory to him in all respects, save for the words "Probationary Contract" typed on it in the upper right-hand corner.[1] Kasprzak had not had a probationary contract in prior years. After consultation with counsel, Kasprzak signed the contract and returned it on April 13, 1975, with the words "Probationary Contract" crossed out and with a letter stating his intent to teach the following year, his returning the signed contract under protest, and his intent to pursue the matter. The Board met on April 14, 1975, and it decided to treat Kasprzak's actions as a rejection of the contract and a counteroffer, which it declined to accept; the Board determined not to offer Kasprzak another contract, and Kasprzak was so notified.

The Association filed a complaint with the Wisconsin Employment Relations Commission (WERC). On June 26, 1975, a WERC examiner commenced a hearing on the matter, but the hearing was adjourned when the parties stipulated to adjourn the WERC hearing and to process the complaint as a grievance under the collective bargaining agreement, beginning with the Board of Education[2]

---

[1] The Collective Bargaining Agreement provides as follows about a Probationary Teacher in Article X:

"E. Probationary Teacher

"The Board reserves the privilege of retaining a marginal teacher on a probationary basis at no increase or at a marginal increase in salary, rather than placing that teacher on the actual salary schedule. Such teacher shall be informed of his shortcomings at least 15 days prior to contract renewal."

In addition, Article V, A provides:

"3. No teacher shall be disciplined or reprimanded without good reason."

[2] Article IV, A, of the Collective Bargaining Agreement provides as Step 4 of the Grievance Procedure a submission to the Board of Education:

"4. If the grievance is not satisfactorily adjusted at step three of the grievance procedure, the Association may submit a grievance to the Board of Education within ten (10) school days of

and, if necessary, taking the case to arbitration pursuant to the collective bargaining agreement.[3] The WERC was

the receipt of the Superintendent's written answer to the grievance. The Board of Education, at its next regularly scheduled Board Meeting, or at a special meeting called for the purpose, shall pass upon the grievance and within fifteen (15) school days submit a written answer to the Association's Grievance Committee Chairman, and to the Aggrieved.

"It is mutually agreed that all grievances, with one exception, shall not be pursued any further than through step four (4) of the grievance procedure.

"Grievance pertaining to discharge and non-renewal is the one exception mentioned above. These grievances may continue through the entire grievance procedure as written in this Master Contract.

"5. If the Aggrieved still believes the grievance is not settled satisfactorily by the Board of Education, he may, in writing, request the Association's Grievance Committee within fifteen (15) school days of receipt of the Board's decision to submit to arbitration."

[3] Article IV, A of the Collective Bargaining Agreement sets forth the Arbitration Procedure:

"6. Arbitration Procedure:

"a. The Board and Association shall select a representative respectively from each body.

"b. If the two representatives cannot agree upon a third party, the WERC shall submit five names from which an arbitrator shall be selected in the following manner:

"From the five names submitted, the Association's representative and the Board's representative shall alternately strike a name from the list until one name remains, who will be the arbitrator. The Association's representative shall strike the first name.

"c. The decision of the body in section 'a' or the arbitrator in section 'b' shall be final and binding upon the parties, however, the body or the arbitrator shall have no authority to add to, subtract from, or modify the terms of the collective bargaining agreement.

"d. The cost of the arbitrator, as well as the cost of the transcript, if mutually requested or requested by the arbitrator, shall be shared equally by the parties. Each party shall be responsible for any costs which might arise from the employment of its own representative and agree to share equally the costs arising from the employment of the third agreed upon arbitrator and all costs arising from the arbitration proceeding."

to be advised, after the arbitrators' decision, what if any further proceedings in the prohibited practice matter were requested. After the adjournment, the grievance was filed with the Board of Education on June 27, 1975 and was rejected by the Board on July 15, 1975. The parties then proceeded to arbitration. An arbitration selection process was used which did not employ the services of the WERC. The representatives of the School District and the Association agreed upon the arbitrators who heard the case on September 16, 1975. The two issues agreed upon for submission were (1) is the grievance subject to arbitration under the terms of the collective bargaining agreement, and (2) if the issue is arbitrable, did the Board of Education violate that collective bargaining agreement. The arbitrators found that the issue is arbitrable and that the Board had violated the agreement.

The School Board then filed a complaint in the circuit court for Jefferson county, on December 15, 1975, seeking declaratory relief determining that the award was void and of no effect in that the award is contrary to the agreement and beyond the authority and jurisdiction of the arbitrators. The Association demurred. On December 26, 1975, the Association moved to amend its complaint before the WERC trial examiner to enforce the award. The examiner refused to proceed, deferring to the jurisdiction of the court in the pending action stating that presumably the standards of review in the court and the WERC would be similar. Following the examiner's reasoning, the WERC, on February 6, 1976, affirmed his decision. On April 7, 1976, the Association withdrew its demurrer in the court action and filed an answer and a motion to confirm the award under sec. 298.09, Stats. The circuit courts' order from which the appeal is taken denied the School Board's requested relief and granted the Association's motion for confirmation of the award.

## I.

On appeal the School Board contends that the arbitrators' award is void because the grievance was not arbitrable. The School Board says that it agreed only to arbitrate "discharge and nonrenewal" and that Kasprzak's situation does not fall into these categories and therefore is a non-arbitrable grievance. The School Board reminds us that the basic undisputed rule is that unless the parties agree by contract to arbitrate a matter, the matter is not arbitrable.

"For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

The arbitrators obtain their authority from the contract, and the task of interpreting the contract to determine whether the dispute is arbitrable and whether the arbitrator has jurisdiction is for a court.

". . . Arbitration is a matter of contract and a party cannot be required to submit to arbitration a dispute which it has not agreed so to submit, and it is in the province of the court to determine on the basis of the contract whether or not the employer is bound to arbitrate. *Atkinson v· Sinclair Refining Co.* (1962), 370 U.S. 238, 82 Sup. Ct. 1318, 8 L. Ed.2d 462." *Int'l Union, UAW, Local 577 v. Hamilton Beach Mfg. Co.*, 40 Wis.2d 270, 282, 162 N.W.2d 16 (1968).

Thus the question of substantive arbitrability—whether the parties agreed to submit an issue to arbitration—is a question of law for the courts to decide.[4] The arbitrator

---

[4] *Local 1226 v. Rhinelander*, 35 Wis.2d 209, 219, 151 N.W.2d 30 (1967); *Int'l Union, UAW, Local 557 v. Hamilton Beach Mfg. Co.*, 40 Wis.2d 270, 162 N.W.2d 16 (1968); *Int'l Union of Operat-*

cannot, except by agreement of the parties, be the judge of the scope of his authority under the contract.[5] If a party asserts that the arbitrator is to decide the question of arbitrability "the claimant must bear the burden of a clear demonstration of that purpose."[6]

*ing Engineers, Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 491 (1972); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241 (1962); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546, 547 (1964).

For a discussion of the determination of arbitrability, *see* Undergraff & McCoy, *Arbitration of Labor Disputes*, 25–31 (2d ed. 1961); Cox, *Reflections Upon Labor Arbitration*, 72 Harv. L. Rev. 1482 (1959); Jones, *Judicial Review of Arbitral Awards—Common-law Confusion and Statutory Clarification*, 31 So. Cal. L. Rev. 1 (1957); Hays, *The Supreme Court and Labor Law: October Term 1959*, 60 Colum. L. Rev. 901 (1960); Smith, *The Question of "Arbitrability"—The Roles of the Arbitrator, the Court & The Parties*, 16 Sw. L.J. 1 (1962); Smith & Jones, *The Supreme Court & Labor Dispute Arbitration: The Emerging Federal Law*, 63 Mich. L. Rev. 751 (1964); Griffin, *Judicial Review of Labor Arbitration Awards*, 4 Suffolk U.L. Rev. 39 (1969); Comment, *Judicial Deference to Arbitral Determinations: Continuing Problems of Power & Finality*, 23 U.C.L.A. Law Rev. 963 (1976); Note, *Judicial Control of the Arbitrator's Jurisdiction: A Changing Attitude*, 58 Nw. U.L. Rev. 521 (1964); Note, *Judicial Review of Labor Arbitration Awards After the Trilogy*, 53 Corn. L. Rev. 136 (1967).

[5] ". . . the parties may have provided that any dispute as to whether a particular claim is within the arbitration clause is itself for the arbitrator. Again the court, without more, must send any dispute to the arbitrator, for the parties have agreed that the construction of the arbitration promise itself is for the arbitrator . . . ." *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 571 (1960). (Brennan, J., concurring)

[6] *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583 n. 7 (1960). *See also Metal Prods. Workers Union Local 1645 v. Torrington Co.*, 358 F.2d 103, 105 (2d Cir. 1966); *Local 719, Am. Bakery & Conf. Workers v. Nat'l Biscuit Co.*, 378 F.2d 918, 921 (3d Cir. 1967); *Assoc. Milk Dealers, Inc. v. Milk Drivers U., Local 753*, 422 F.2d 546, 550 (7th Cir. 1970); *Int'l Union of Operating Engineers, Local 139 v. Carl A. Morse, Inc.*, 529 F.2d

In the case at bar the parties appear to have entered into two agreements: (1) the collective bargaining agreement; and (2) the agreement to submit this particular grievance to arbitration.

The collective bargaining agreement is an agreement to submit certain future grievances to arbitration, namely, those relating to discharge and non-renewal.[7] This

574, 580 (7th Cir. 1976); *O'Malley v. Petroleum Maintenance Co.*, 48 Cal.2d 107, 308 P.2d 9 (1957).

[7] Article V, B, of the Collective Bargaining Agreement deals with discharge and non-renewal as follows:

"B. Discharge and Non-Renewal of Contract

"An employee who has been notified of a recommendation for dismissal and non-renewal of contract may process this as grievance commencing at step four (4) of the grievance procedure.

"1. Whenever a question of non-renewal of contract of a teacher is raised, such question shall be raised no later than March 15th of the contract year and shall follow no less than two (2) evaluations between evaluator and the teacher. A subsequent conference between evaluator, teacher, and Administration shall be held before any recommendation is made to the Board of Education regarding non-renewal of contract. Recommendation of refusal to renew a contract shall be made in executive session of the Board following their regular February meeting.

"2. All teachers new to the system are on a trial period of two (2) contract years. At anytime during this trial period the contract for these teachers may be terminated upon recommendation of the principal and superintendent without recourse except to the Board of Education."

Article V, 9, further provides:

"G. The Association recognizes the legal obligation of the Board to give to each teacher employed by it a written notice of renewal or refusal to renew his individual contract for the ensuing school year on or before March 15, of the school year during which said teacher holds a contract, pursuant to Section 118.22(2) of the Wisconsin Statutes. In the event an agreement concerning questions of wages, hours, and conditions of employment has not been reached, the Wisconsin Statutes will be followed. Individual teacher contracts given out by the Board shall be governed by the terms of any agreement subsequently reached."

agreement has a narrow rather than a broad arbitration clause. It does not contain the "standard" provision subjecting to arbitration any dispute as to the meaning, interpretation and application of the agreement. The collective bargaining agreement does not expressly or impliedly give the arbitrators authority to determine the scope of their jurisdiction and make a final and binding ruling on the question of arbitrability. Thus, if only the collective bargaining agreement were before us, the court would determine the issue of substantive arbitrability, that is whether the Kasprzak grievance was arbitrable within the terms of the agreement.

However, in the case at bar the parties reached an agreement to submit to arbitration the existing controversy involving Kasprzak. At the hearing before a WERC examiner on the Association's complaint against the Board, the School Board's counsel set forth the following agreement between the parties: The Kasprzak grievance will be processed first at the Board level "without prejudice to the [Association] to argue that the matter has already been brought to the Board of Education . . . . If the grievance is not satisfactorily resolved at the Board level, the Association may invoke the Arbitration procedures in the agreement without prejudice to the Board's position that the subject matter of the grievance is not arbitrable."[8]

The matter was not satisfactorily resolved at the Board level and was submitted to arbitration. The

_See_ note 3, _supra_, setting forth the arbitration procedures of the agreement.

[8] This phrase, "without prejudice to the Board's position" could be interpreted in two ways: it could mean that the Board was reserving its right to argue the issue of arbitrability before the arbitrator; or it could mean that the Board was reserving its right to seek _de novo_ judicial review of the arbitrators' decision on the question of arbitrability. We find that the actual intent of the parties in this case is not clear.

School Board's brief to the arbitration panel describes the submission to arbitration as follows:

"The Board of Education denies the matter is arbitrable under the 1973–75 collective bargaining agreement . . . . In the event the matter is deemed arbitrable, the Board denies that it violated any provision of that agreement.
"  . . .
"The parties stipulated to submission of the following statement of issues:
"1.  Is the grievance subject to arbitration under the terms of the 1973–75 collective bargaining agreement?
"2.  If issue #1 is answered in the affirmative, did the Board of Education violate that collective bargaining agreement?"

The circuit court's opinion states:

". . . The parties agreed to adjourn the matter and submit the issues, *including the question of arbitrability*, to arbitration pursuant to the collective bargaining agreement."

There appears to be disagreement between the parties as to the meaning of the submission agreement. The Association contends the parties conferred authority on the arbitration panel to make a final and binding decision on the issue of arbitrability, subject to limited judicial review. The School Board contends that it was in effect making a "special appearance" expressly reserving its right to judicial determination of the substantive arbitrability issue. The cases have recognized the distinction between (1) submitting the question of "arbitrability" to the arbitrator for a final and binding decision and (2) submitting the grievance to the arbitrator, challenging the arbitrator's jurisdiction to arbitrate, and reserving the right to *de novo* judicial determination. The School Board in its brief before this court attempts to treat the two procedures as one and the same and straddles the two by stating:

"The School Board has consistently taken the position that the contract did not confer arbitrability, but that this was a legitimate issue for submission to the arbitrator in the first instance."

The problem is to decide which course the parties agreed to follow. There are conflicting manifestations of intent. The transcript before the WERC hearing examiner might be interpreted to mean either course (*see* note 8, *supra*). The submission agreement itself might be interpreted to mean that the parties were submitting the issue of arbitrability to the arbitrators for final and binding determination.

If the parties submitted the issue of arbitrability to the arbitrators for final and binding decision, the scope of review of the award on the issue of arbitrability would be limited, as is the scope of review of the merits of the award.[9]

If the parties submitted the merits to the arbitrators and at the same time challenged the arbitrability of the question and reserved the right to challenge in court an adverse ruling on arbitrability, the court would decide the issue of arbitrability *de novo*.[10] This procedure is

[9] *See* Parts III and IV of this opinion for a discussion of the scope of judicial review of the merits of the arbitrators' award.

[10] "Thus, where as here the reluctant party has presented its objection to arbitrability to the arbitrator and has not thereafter clearly indicated its willingness to forego judicial review, we believe the issue is sufficiently preserved for our subsequent inquiry." *Local 719, Am. Bakery & Conf. Workers v. Nat'l Biscuit Co.*, 378 F.2d 918, 922 (3d Cir. 1967).

*See also Dt. 50, United Mine Workers of America v. Pittston Co.*, 210 F. Supp. 781 (N.D. W.Va. 1962); *O'Malley v. Petroleum Maintenance Co.*, 48 Cal.2d 107, 308 P.2d 9 (1957); Annot., *Participation in Arbitration Proceedings as Waiver of Objections to Arbitrability*, 33 A.L.R.3d 1242 (1970).

By the phrase *de novo* judicial determination of arbitrability (or similar phrases used herein), we mean that the question of arbitrability is one of law for the court to decide. If a question of law

similar to court procedure where a party challenges the court's jurisdiction. The court considers the question and may hold that it has jurisdiction. The parties then proceed to the merits of the case maintaining their right to continue the jurisdictional challenge on appeal. If we were to hold that under these circumstances the parties are bound by the arbitrators' decision on arbitrability, the party alleging nonarbitrability would be forced to enjoin arbitration or to refrain from participation in arbitration. Such a judicial procedure entails time and cost. If meaningful arbitration were thus indefinitely delayed, the purpose of the sec. 111.70, Stats. and of the collective bargaining agreement could be defeated.[11] In contrast, allowing the arbitrator to make the initial determination of arbitrability, which is subject to *de novo* judicial determination, is desirable since it economizes time and effort.[12] The evidence bearing upon questions of arbitrability are very often relevant to the merits. An evaluation of the arbitrability issue may demand substantially the same expertise and experience with employment relations as a decision on the merits.

Numerous cases in other jurisdictions have endorsed this procedure of allowing the courts to determine arbitrability *de novo* after an arbitrator's initial determina-

is involved, due consideration should be given by the court to the arbitrator's interpretation of the contract and decision of arbitrability, but the court is not bound by the arbitrator's interpretation or decision. *Cf. Moran v. Shern*, 60 Wis.2d 39, 46, 208 N.W.2d 348 (1973). *See* note 4, *supra*, and note 14, *infra*, and Part II of this opinion for a discussion of judicial determination of arbitrability.

[11] *Cf. Teamsters Union Local 695 v. Waukesha Co.*, 57 Wis.2d 62, 68, 203 N.W.2d 707 (1973), holding that a trial court order directing arbitration is not appealable under sec. 298.15, Stats. The court said that the time element involved in an appeal would be "adverse to the obvious purpose of the arbitration clause of the agreement." *See Local 719, Am. Bakery & Conf. Workers v. Nat'l Biscuit Co.*, 378 F.2d 918, 922 (3d Cir. 1967).

[12] Cox, *Some Lawyers' Problems in Grievance Arbitration*, 40 Minn. L. Rev. 41, 54, 55 (1955).

tion.[13] We find nothing in the development of "common law arbitration" in this state or in ch. 298, Stats., to bar the use of this procedure in Wisconsin.[14] Sec. 298.03,

[13] *See* note 10, *supra*.

[14] "The courts may become concerned with arbitrability questions in several ways:

"(1) The party challenging arbitrability may seek a temporary injunction of 'stay of arbitration' pending determination of arbitrability.

"(2) The party demanding arbitration may seek a court order compelling the other party to arbitrate where the applicable law upholds agreements to arbitrate future disputes; the latter party then raises the issue of arbitrability.

"(3) The issue of arbitrability may be considered when an award is taken to court for review or enforcement, unless the parties have clearly vested the arbitrator with exclusive and final right of determining arbitrability, or unless the right to challenge arbitrability is held by the court to have been otherwise waived under the circumstances of the case." Elkouri and Elkouri, *How Arbitration Works*, 170–171 (3d ed. 1976).

Some commentators have indicated that the role of the court in determining arbitrability may be somewhat different after the award than before:

"In most instances, the question [of arbitrability] arose on a petition to require or stay arbitration. In some, however, the question was whether an arbitration award was valid and enforceable. There seems to be no apparent differentiation between the courts' approaches to these two types of cases, although some distinction might well be justified." Smith, *The Question of "Arbitrability"—The Roles of The Arbitrator, The Court, & The Parties*, 16 Sw. L.J. 1, 16 (1962).

"The question of the arbitrator's authority is really one of his contractual jurisdiction, and the courts cannot be expected to place their stamp of approval upon his action without making some examination of his jurisdiction to act. As stated above, we think more exhaustive judicial review of this question is appropriate after the award has been made than before the award in a suit to compel arbitration; in this way, the court receives the benefit of the arbitrator's interpretive skills as to the matter of his contractual authority. *See Livingston v. John Wiley & Sons, Inc.*, 313 F.2d 52, 59 n. 5 (2d Cir. 1963), aff'd 376 U.S. 543, 84 S. Ct. 909, 11 L. Ed.2d 858 (1964)." *Torrington Co. v. Metal Products Workers Union Local 1645*, 362 F.2d 677, 680, n. 6 (2d Cir. 1966).

Stats., provides that a party aggrieved by an alleged failure to arbitrate may apply for a court order directing that arbitration proceed in accordance with the contract.[15] Sec. 298.03 does not prohibit the parties from agreeing to arbitrate and reserving the issue of arbitrability for court review subsequent to arbitration. Such a procedure is consistent with sec. 298.03 and *Teamsters Union Local 695 v. Waukesha County*, 57 Wis.2d 62, 203

*See Dehnart v. Waukesha Brewing Co.*, 17 Wis.2d 44, 46, 115 N.W.2d 40 (1962), where this court determined arbitrability after an award was rendered. The court granted judgment affirming the award under the declaratory judgment statute, sec. 269.56(8), Stats.

[15] Sec. 298.03, Stats., provides:

"Court order to arbitrate; procedure. The party aggrieved by the alleged failure, neglect or refusal of another to perform under a written agreement for arbitration, may petition any court of record having jurisdiction of the parties or of the property for an order directing that such arbitration proceed as provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made as provided by law for the service of a summons. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement or the failure, neglect or refusal to perform the same is in issue, the court shall proceed summarily to the trial thereof. If no jury trial is demanded the court shall hear and determine such issue. Where such an issue is raised, either party may, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue to a jury called and impaneled as provided in s. 255.096. If the jury finds that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury finds that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

N.W.2d 707 (1973), in which this court held that a trial court's order to arbitrate pursuant to sec. 298.03 is not appealable. The court noted that the parties retained their rights for judicial review even though they proceeded with arbitration.

"The trial court remains the forum to which either party may return to assert any and all objections to referral and award following arbitration. No right, including the right to challenge the complaint being a grievance under the terms of the agreement, is lost by holding that the order to proceed with arbitration is not appealable. Under the construction given the statute, such issues may may be raised by either party, following the resort to arbitration, but not before. They are not erased nor cut off by such deferral." *Teamsters Union Local 695 v. Waukesha County, supra,* 57 Wis.2d at pp. 69, 70.

The circuit court's decision in the case at bar states that "both parties in this case agreed to arbitrate the question of arbitrability." But the circuit court did not determine whether the parties intended the arbitrators' decision on arbitrability to be final and binding or to be subject to *de novo* judicial determination.[16]

As discussed above, the parties may submit arbitrability to an arbitrator, the only limitation being that there exists a clear demonstration of the purpose to have arbitrators decide arbitrability as a final and binding determination.[17] Accordingly, we urge parties to collective bargaining agreements and parties to submission to arbitration agreements to set forth in these agreements clearly and precisely their understanding of the effect of the arbitrators' deciding the issue of arbitrability. If the

[16] *See New Bedford Def. Prods. Div. v. Local No. 1113,* 160 F. Supp. 103, 111 (D. Mass. 1958), aff'd 258 F.2d 522 (1st Cir. 1958).

[17] *See* note 6, *supra.*

parties intend the arbitrators' decision on arbitrability to be final and binding the agreement should so state. If the parties intend the arbitrators' decision on arbitrability to be subject to *de novo* judicial determination of arbitrability, the agreement should so state.

We need not determine the parties' intent here since, as explained below, we hold that in this case the result is the same whatever the intent of the parties.

## II.

If we were to view this case as one in which the question of arbitrability is for the court, not the arbitrator's final and binding determination, we would find that the issue is arbitrable under the collective bargaining agreement.

When the court determines arbitrability it must exercise great caution. The court has no business weighing the merits of the grievance. It is the arbitrators' decision for which the parties bargained. In *Dehnart v. Waukesha Brewing Co., Inc.,* 17 Wis.2d 44, 115 N.W.2d 490 (1962), this court adopted the *Steelworkers Trilogy* teachings of the court's limited function. The court's function is limited to a determination whether there is a construction of the arbitration clause that would cover the grievance on its face and whether any other provision of the contract specifically excludes it. This case differs from those in the *Steelworkers Trilogy. United Steelworkers v. American Mfg. Co.,* 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960). The *Steelworkers Cases* involve broad arbitration clauses submitting questions of contract interpretation to the arbitra-

tor. This contract delineates a restricted area of arbitrable grievances. Nevertheless, we believe the teachings of the *Steelworkers Trilogy* are applicable to the case at bar.

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 583 (1960).

Our adherence to the *Trilogy* is in keeping with the strong legislative policy in Wisconsin favoring arbitration in the municipal collective bargaining context as a means of settling disputes and preventing individual problems from growing into major labor disputes. Secs. 111.70(3) (a) 5, 111.70(6), Stats.; *Local 1226 v. Rhinelander*, 35 Wis.2d 209, 216, 151 N.W.2d 30 (1967); *Teamsters Union Local 695 v. Waukesha County*, 57 Wis.2d 62, 69, 203 N.W.2d 707 (1973).

Under the limited arbitration clause used here, the party invoking arbitration must point to specific contract language that arguably expressly covers the subject of the grievance. Here the Association contends there was a discharge and non-renewal and points to specific contract language expressly requiring arbitration for discharge and non-renewal. The School District resists arbitration with a claim that there was no discharge or non-renewal but rather a counter-offer by the employee and a non-acceptance by the District. We do not mean to suggest that a party labeling any grievance as a discharge and non-renewal could compel arbitration. Mere invocation of a contract clause does not preclude examination by this court of the issue of arbitrability. We must initially determine whether the contract phrase "discharge and non-renewal" (which phrase is not ade-

quately defined in the agreement) is susceptible of an interpretation that covers the asserted dispute.

We hold that it cannot be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. The grievance is therefore arbitrable.

## III.

If we were to view this case as one in which the question of arbitrability is for the arbitrators' final and binding determination, we would find no basis either under ch. 298, Stats., or under the common law to reverse the arbitrators' decision that the grievance is arbitrable.

The School Board argues that ch. 298, Stats., is inapplicable to arbitration in this case because sec. 298.01[18] makes ch. 298 inapplicable to contracts between employers and associations of employees, except as provided in sec. 111.10, Stats.[19] The Board therefore objects

[18] Sec. 298.01, Stats., provides:

"Arbitration clauses in contracts enforceable. A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract; provided, however, that the provisions of this chapter shall not apply to contracts between employers and employes, or between employers and associations of employes, except as provided in section 111.10 of the statutes."

[19] Sec. 111.10, Stats., provides:

"Arbitration. Parties to a labor dispute may agree in writing to have the commission act or name arbitrators in all or any part of such dispute, and thereupon the commission shall have the power so to act. The commission shall appoint as arbitrators

to the trial court's decision reviewing the award under sec. 298.10[20] and confirming and enforcing the award

---

only competent, impartial and disinterested persons. Proceedings in any such arbitration shall be as provided in ch. 298."

[20] Sec. 298.10, Stats., provides:

"Vacation of award, rehearing by arbitrators. (1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud or undue means;

"(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(2) Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

Sec. 298.11, Stats., provides:

"Modification of award. (1) In either of the following cases the court in and for the county wherein the award was made must make an order modifying or correcting the award upon the application of any party to the arbitration:

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

"(b) Where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted;

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"(2) The order must modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

under sec. 298.09, Stats.[21] Sec. 111.10 does provide that if parties to a labor dispute agree to have the WERC act or name arbitrators the "proceedings in any such arbitration shall be as provided in ch 298." The trial court held that the provisions in this collective bargaining agreement for WERC assistance in selecting arbitrators[22] was sufficient to render sec. 111.10 applicable even though the WERC did not actually participate in selecting the arbitrators in this case. The Association urges this court to find that sec. 111.70, Stats., which authorizes the WERC to enforce grievance arbitration in municipal employment, makes such arbitrations statutory rather than common law arbitrations and subject to ch. 298.[23] We need

[21] Sec. 298.09, Stats., provides:

"Court confirmation award, time limit. At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in the next two sections. Notice in writing of the application shall be served upon the adverse party or his attorney 5 days before the hearing thereof."

[22] *See* note 3, *supra.*

[23] Sec. 111.70 (3) (a) 5., Stats., provides:

"(3) Prohibited Practices and Their Prevention. (a) It is a prohibited practice for a municipal employer individually or in concert with others:

". . .

"5. To violate any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours and conditions of employment affecting municipal employes, including an agreement to arbitrate questions arising as to the meaning or application of the terms of a collective bargaining agreement or to accept the terms of such arbitration award, where previously the parties have agreed to accept such award as final and binding upon them."

Sec. 111.70 (3) (b) 4., Stats., provides:

"(3) Prohibited Practices and Their Prevention. . . .

not discuss the interrelation of sections 298.01, 111.10 and 111.70, Stats., at this time, because this case is not affected by a resolution of this issue.[24]

The standard of review of an award under both ch. 298 and common law is substantially the same. The court will not relitigate issues submitted to arbitration. The parties contracted for the arbitrator's decision, not the court's. Under common law rulings, an award may be set aside for fraud or partiality or gross mistake by the arbitrator; fraud or misconduct by the parties affecting the result; or want of jurisdiction in the arbitrator.[25]

"(b) It is a prohibited practice for a municipal employe, individually or in concert with others:

". . .

"4. To violate any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours and conditions of employment affecting municipal employes, including an agreement to arbitrate questions arising as to the meaning or application of the terms of a collective bargaining agreement or to accept the terms of such arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them."

[24] As the trial court noted, the case was totally submitted to the court, and the court must decide what order or judgment to enter. Under both ch. 298, Stats., and the common law the trial court can determine, after the award, the issue of substantive arbitrability, and the prevailing party can ask the court to enforce the award.

[25] "[W]e note that at common law the entire proceedings of arbitration and award merely constitute a contract between the parties and the successful party can enforce the award only in the same manner as he can enforce an ordinary contract, with the added advantage that the award may be introduced in evidence and is conclusive as to the matters therein decided in so far as they are within the terms of the submission." *Pick Industries, Inc. v. Gebhard-Berghammer, Inc.*, 262 Wis. 498, 503, 56 N.W.2d 97, 57 N.W.2d 519 (1952).

*See also Perth v. Wynhoff*, 28 Wis.2d 336, 343, 173 N.W.2d 33 (1965); *Putterman v. Schmidt*, 209 Wis. 442, 451, 245 N.W. 78

Chapter 298, Stats., sets forth similar standards.[26] If these standards were not violated by the arbitrators' award, the trial court should confirm the award.

In *WERC v. Teamsters Local No. 563*, 75 Wis.2d 602, 610, 250 N.W.2d 696 (1977), and in *Milwaukee Professional Firefighters v. Milwaukee*, 78 Wis.2d 1, 253 N.W. 2d 481 (1977), we reiterated our "hands off" attitude toward arbitrators' decisions. This court has, on numerous occasions, said that:

"Judicial review of arbitration awards is very limited. The strong policy favoring arbitration as a method for settling disputes under collective bargaining agreements requires a reluctance on the part of the courts to interfere with an arbitrator's award upon issues properly submitted . . . . Thus the function of the court upon review of an arbitration award is a supervisory one, the goal being to insure that the parties receive the arbitration that they bargained for." *Milwaukee Professional Firefighters v. Milwaukee, supra.*

The decision of an arbitrator cannot be interfered with for mere errors of judgment as to law or fact. Courts will overturn an arbitrator's award if there is a perverse misconstruction or if there is positive misconduct plainly established, or if there is a manifest disregard of

(1932); *Koepke v. E. Liethen Grain Co.*, 205 Wis. 75, 76–79, 236 N.W. 544 (1931); *Travelers Ins. Co. v. Pierce Engine Co.*, 141 Wis. 103, 107, 108, 123 N.W. 643 (1909); *Donaldson v. Buhlman*, 134 Wis. 117, 119, 113 N.W. 638, 114 N.W. 431 (1908); Jones, *Judicial Review of Arbitral Awards—Common-Law Confusion & Statutory Clarification*, 31 So. Calif. L. Rev. 1, 14–19 (1957); Ziskind, *Labor Arbitration Under State Statutes* 3 (U. S. Dept. of Labor 1943); Scoles, *Review of Labor Arbitration Awards on Jurisdictional Grounds*, 17 U. of Chi. L. Rev. 616 (1950); Sturges, *Commercial Arbitrations & Awards*, sec. 235 (1930); Elkouri & Elkouri, *How Arbitration Works*, 36–38 (3d ed. 1973).

[26] *See* note 2, *supra.*

the law, or if the award itself is illegal or violates strong public policy.[27]

The trial court determined that there is no basis for vacating the arbitrators' decision that the grievance is arbitrable. We agree.

## IV.

Also submitted to the trial court was the question of whether the arbitrators' determination of the merits of the grievance should be reversed. We discussed the common law and ch. 298 standards for judicial review of an award above. The School Board contends that the award ignores secs. 118.21 and 118.22, Stats., relating to teachers' contracts and renewals thereof, and is thus contrary to public policy. The trial court reviewed the award and found the award to be based on reason and on the record. The arbitrators had not exceeded their powers. The trial court did not—and we do not—find the award to be contrary to sec. 118.21 or sec. 118.22, Stats., or any public policy of this state. The trial court's order is accordingly affirmed and modified only to change the date of reinstatement of Kasprzak to not later than twenty days after remittitur instead of not later than August 23, 1976, as the trial court's order provided. We restate the order of the trial court as follows. The Association's motion to confirm and enforce the award be and the same hereby is granted. The Joint School District No. 10, City of Jefferson, is prohibited from failing to restore the status quo as it existed prior to its breach of the parties' collective agreement by not reinstating Defendant Charles Kasprzak to employment in the position which he would

[27] *See* *WERC* *v.* *Teamsters* *No.* *563*, 75 Wis.2d 602, 617 n. 5, 618, 250 N.W.2d 696 (1977) (Abrahamson, J. dissenting opinion.)

otherwise have held had the dispute, which was the subject matter of the arbitration award dated December 1, 1976, not arisen and that he be made whole forthwith for any lost earnings as a result of the Board action, less any earnings from employment he received during such period of unemployment and less any unemployment compensation he may have received during said period; that said reinstatement be effectuated as soon as reasonably possible but in no event later than twenty days after remittitur; and that said grievant be reinstated in accordance with said probationary contract as designated by the Plaintiff School Board and that any issue concerning said status be resolved, if the parties so wish, in other proceedings.

*By the Court.*—Order modified and, as modified, affirmed.