**FLEET MORTGAGE CORPORATION, Plaintiff,**

v.

**Paul LYNTS, Chicago Title Insurance Company, and Wisconsin Lawyers Mutual Insurance Company, Defendants.**

No. 94–C–1094.

United States District Court, E.D. Wisconsin.

March 3, 1995.

Gary P. Lantzy, Kohner, Mann & Kailas, Milwaukee, WI, for plaintiff.

James G. Allison, Milwaukee, WI, for Paul Lynts and Wisconsin Lawyers Mut. Ins. Co., Whyte, Hirschboeck & Dudek.

Irving D. Gaines, Milwaukee, WI, for Chicago Title Ins. Co. Gaines Law Offices.

### DECISION AND ORDER

GOODSTEIN, United States Magistrate Judge.

On September 29, 1994, Fleet Mortgage Corporation (hereafter "Fleet" or "Fleet

---

Mortgage") filed this action against the defendants Paul Lynts (hereafter "Lynts"), Chicago Title Company (hereafter "Chicago Title"), and Lynts' professional malpractice insurer Wisconsin Lawyers Mutual Insurance Company (hereafter "WILMIC"). The parties consented to the full jurisdiction of the magistrate judge pursuant to 28 U.S.C. Sec. 636(c) and an order transferring the case to this court was entered on November 14, 1994 by Judge J.P. Stadtmueller, to whom the case was initially assigned.

Chicago Title moves to compel arbitration of the dispute between itself and Fleet Mortgage. Fleet opposes the motion. A brief summary of the undisputed facts from the parties' briefs follows.

## I. Background

This action arises out of a residential real estate transaction which was closed on June 16, 1994 within the Eastern District of Wisconsin. Fleet Mortgage was the lender and Paul Lynts was an attorney approved by Chicago Title in connection with its real estate transaction settlement services. Lynts was not an employee of Chicago Title, but had entered into an agreement with it regarding the services he was to perform as a closing agent. Chicago Title issued a commitment to insure the interests of the purchaser and Fleet Mortgage. The purchaser of the property is not a party to this action. On July 30, 1991, Chicago Title had issued a "closing letter" to Fleet Mortgage whereby it agreed to protect the lender from any losses incurred as a result of Lynts' action in his capacity as closing agent.

Fleet issued a check to Lynts in the amount of $155,822.50 to be disbursed according to Fleet's settlement instructions. Lynts deposited the check and subsequently issued a check to the seller, also a non-party, for $152,680.04. The check was returned unpaid due to insufficient funds in the account. Lynts later issued another check to the seller for $65,680.04, which was negotiated. Fleet then issued a check to seller for $87,000 to make up the difference still owed to the seller. Fleet brought this suit to recover the $87,000 from Chicago Title, Paul Lynts, and his liability carrier, WILMIC.

Chicago Title seeks to compel the submission of plaintiff's claim against it to arbitration on the basis of an arbitration clause in the policy of title insurance. Chicago Title submits that Lynts' actions are covered by the closing letter which is integrated into the title insurance policy and thus is subject to arbitration. Fleet Mortgage responds that it has not consented to arbitration and also argues that the closing letter, which does not contain an arbitration clause, is separate and distinct from the title insurance policy and is thus not subject to arbitration. The parties do not dispute that Wisconsin substantive law applies to the issue at hand.

## II. Analysis

### A. Whether the arbitration clause of the title insurance policy covers the dispute between the parties.

This analysis begins with the recognition that Wisconsin state policy encourages arbitration as a form of dispute resolution. *Lukowski v. Dankert et al.*, 178 Wis.2d 110, 113, 503 N.W.2d 15, 17 (Ct.App.1993) (citing *City of Madison v. Madison Police Ass'n*, 144 Wis.2d 576, 587, 425 N.W.2d 8, 12 (1988)), *aff'd*, 184 Wis.2d 142, 515 N.W.2d 883 (1994); *Racine Educ. Ass'n*, 176 Wis.2d 273, 281, 500 N.W.2d 379, 382 (Ct.App.1993). Whether a matter is subject to arbitration is a question of law and, as such, is to be determined by the courts. *Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n*, 78 Wis.2d 94, 101–02, 253 N.W.2d 536, 540 (1977); *AT & T Technologies, Inc. v. Communications Workers of Am., et al.*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Wisconsin courts have not addressed the issue of arbitration with respect to title insurance policies as it applies in this case. However, it is instructive to look to Wisconsin case law involving arbitration generally.

The Wisconsin Supreme Court has stated that "(a)n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of

coverage." *Joint School District No. 10*, 78 Wis.2d at 112, 253 N.W.2d at 545 (1977) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1959)). Although both *Joint School District No. 10* and *United Steelworkers* were cases involving labor disputes, the issue before the court in each case was whether a particular dispute was subject to arbitration. Thus, the general principle enunciated is applicable to the present case. Arbitration clauses should be enforced unless there is no interpretation which can rationally bring the controversy under the clause.

█ In the present case, Fleet Mortgage submits that its claim "is based wholly on a closing protection letter . . . ." Fleet Resp. at 4. Therefore, the relationship between the closing protection letter and the arbitration clause of the title insurance policy must be analyzed. Parenthetically, it should be noted that the closing protection letter may not be the sole theory upon which Fleet's claim against Chicago Title could be based. The general principle of agency law that holds a principal liable for the wrongs of its agent could apply in this case. *See e.g., Clients' Sec. Fund of the Bar of N.J. v. Sec. Title and Guar. Co.*, 134 N.J. 358, 634 A.2d 90 (1993) (closing attorney was agent for both the mortgage lender and the title insurer); *Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 634 A.2d 74 (1993) (closing attorney was agent for the title insurer). However, the court will only address Fleet's claim as it pertains to the closing letter because the parties have not raised the question of agency law.

The parties have not cited, nor has the court found, Wisconsin cases concerning the arbitrability of disputes arising under closing protection letters. Consequently, it is appropriate to look to other jurisdictions that have considered the issue.

The New Jersey Supreme Court was recently faced with the issue of who should bear the loss resulting from the closing attorney's theft of funds which were to be used for satisfying the existing first mortgage. These companion cases discussed the use of closing protection letters issued by the title company to the purchaser's lending institu-

tion. In fact, the court acknowledged "the wide spread practice of issuing closing protection letters to third-party lenders." *Clients' Sec. Fund of the Bar of N.J. v. Sec. Title and Guar. Co.*, 634 A.2d at 95. See, also *Sears Mortgage Corp. v. Rose*, 634 A.2d at 86 ("Title-insured companies regularly offer protection to institutional lenders against attorney theft of closing funds intended to pay off a preexisting mortgage."). More importantly, the New Jersey Court recognized such closing letters as part and parcel of title insurance. "The protection against the risk of loss caused by attorney defalcation under the circumstances clearly is an incident to the issuance of title insurance." *Sears Mortgage Corp.*, 634 A.2d at 86.

In resolving the issue of who should bear the loss, the New Jersey Supreme Court resorted to the principles of agency law. Although these two cases do not address the issue of the arbitrability of these disputes, they do portray title insurance industry practice in regard to the use of closing letters. Perhaps the most persuasive source available is that provided by the real estate industry itself. The real estate industry's characterization of the closing letters is arguably reflective of the parties' beliefs and intentions in entering into the title insurance policy because Fleet Mortgage, as a home mortgage lender, and Chicago Title, as a title insurer, should be aware of these practices. Thus, the industry's characterization of the closing letters will be considered by this court.

The arbitration clause at issue here is contained in an American Land Title Association (ALTA) Form 4–6–90 title insurance policy and reads in part: "Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured *arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation.*" (Emphasis added.) The question becomes whether the closing letter is encompassed by this broad language.

The Practicing Law Institute has discussed the practice of title insurance companies issuing "closing protection letters." In its Real

1190

Estate Law and Practice Course Handbook Series, the Institute has stated the following about the ALTA closing letters: "These letters are generally only available when title insurance has been ordered from an agent in connection with a particular transaction." Raymond J. Werner, *Title Insurance in Troubled Times: What You Need to Know*, 375 Prac.L.Inst.Real 39, —— (1988). The letter "is specifically limited to the acts of an agent that has been designated specifically by the lender to handle a transaction where title insurance will be issued by the company providing the letter." Oscar H. Beasley, *Title Insurance 1989: Negotiating Additional Coverage, Exclusions from Coverage*, 331 Prac.L.Inst./Real 23, —— (1989).

Most importantly, the Institute has addressed the relationship between the closing letters and the arbitration clause of the ALTA title insurance policy. After setting out the ALTA title insurance arbitration clause, the Institute stated:

The breadth of these provisions is quite significant, since it means that either of the parties can avoid civil litigation with respect to any of their disputes.... *Thus, if there is a dispute with respect to an Insured Closing Letter, or with respect to some auxiliary service, arbitration can be utilized when the parties can not resolve their own differences.*

James M. Pedowitz, *Title Insurance 1988: Comparing the 1987 and 1970 ALTA Policies—Title Insurance Arbitration*, 306 Prac. L.Inst./ Real 29, —— (1988) (emphasis added).

It should be noted that the language of the arbitration clause at issue here and the one set out by the Practicing Law Institute as an example are identical. The Institute's characterization of the letters is that the letters are generally only issued in connection with a title insurance policy or expected policy. It is apparent that the general perception of the closing protection letters within the industry is that they are related to the issuance of title insurance policy and are not a separate, unrelated service.

Fleet attempts to distinguish the closing letter from the title insurance policy by highlighting the differences in coverage provided by the two documents. In other words,

Fleet argues that because title insurance only protects against defects in title and a closing letter protects against attorney misconduct during the closing, the two cannot be related. Although Fleet is correct in distinguishing between the extent and type of protection provided by each document, this does not mean that the two are so completely separate that the closing letter is not "incident to the issuance of title insurance."

Fleet points out that the closing letter included the following sentence: "Nothing herein is intended to relate to our title insurance obligations to you, if any, which are set forth only in our title insurance commitment or policy." A closer analysis indicates that the statement refers to "obligations" rather than "policy," and merely stresses the distinction between the protection and/or obligations created by the execution of the insurance policy from those created by the issuance of the letter. This distinction, however, does not mean that the documents are mutually exclusive.

Beyond the general recognition that closing letters are concomitant with the issuance of title insurance policies, there is another important factor: Fleet paid no extra consideration for the closing letters. As a business, it is highly unlikely that Chicago Title, or any other title insurance company, would provide closing letter indemnification out of the goodness of its heart. If the closing letters were a "separate contract" as Fleet urges, it would be very peculiar for Chicago Title to give such a promise without something in return. Furthermore, if the promise was considered a separate contract unsupported by consideration, Fleet would be in a worse position because such a gratuitous promise is unenforceable.

Taking into account the above factors and Wisconsin's public policy, the dispute arising out of the closing protection letter is reasonably covered by the arbitration clause of the title insurance policy.

**B. Whether Chicago Title waived it's right to compel arbitration.**

■ Fleet Mortgage Corporation argues, in the alternative, that the defendant, Chica-

go Title, is in default, under Wisconsin law, in proceeding with arbitration and consequently has waived any right to compel arbitration. Chicago Title does not address this argument in its reply brief.

Once again, Wisconsin's public policy should be kept in mind: arbitration is favored as a method of dispute resolution. *Lukowski v. Dankert,* 178 Wis.2d 110, 503 N.W.2d 15 (Ct.App.1993), *aff'd,* 184 Wis.2d 142, 515 N.W.2d 883 (1994). Fleet Mortgage takes the position that Chicago Title is in default in proceeding with arbitration because Chicago Title filed cross claims against other defendants and failed to move the court for a stay of proceedings when it simultaneously moved to compel arbitration. The applicable Wisconsin statute, § 788.02, provides as follows:

> If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Wis.Stats. § 788.02 (1991–92).

Fleet points out that the Wisconsin Supreme Court, in *Saxauer v. Luebke,* 33 Wis.2d 56, 59, 146 N.W.2d 385, 386 (1966), stated that under 788.02, a stay of proceedings is a defendant's "sole" remedy for a failure to arbitrate. In *Saxauer,* the Wisconsin Supreme Court relied upon its prior decision in *Schramm v. Dotz,* 23 Wis.2d 678, 127 N.W.2d 779 (1964), where it held that the defendant, by "intentionally and consistently seeking a dismissal of this action rather than a statutory stay for the purpose of arbitration, had waived its right to insist on arbitration...." *Schramm,* 23 Wis.2d at 681, 127 N.W.2d 779.

In *Schramm,* the defendant consistently moved to dismiss the action claiming that the plaintiff's failure to arbitrate was a bar to its proceeding with trial. *Id.* The court held

that the defendant waived its right to insist on arbitration as a condition precedent to plaintiff's recovery because the defendant never asked for a stay of proceedings, but merely claimed that the plaintiff's failure to arbitrate was cause for dismissal of the action. *Id.* Conversely, Chicago Title's actions, as set out below, are easily interpreted as showing a strong desire to proceed with arbitration despite its cross claims and technical labelling of its motion as a motion to dismiss.

Fleet also notes that in determining whether a party has waived arbitration, a court must use an "overall evaluation of the involvement and conduct up to the time of the request for arbitration of the party requesting arbitration." Fleet's Br. in Opp'n to Def.'s Mot. at 9 (citing *Meyer v. Classified Ins. Corp. of Wis.,* 179 Wis.2d 386, 397, 507 N.W.2d 149, 154 (Ct.App.1993)). In *Meyer,* the defendant was deemed to have waived arbitration because of a number of factors: 1) the deadline for motions had passed; 2) the motion was not filed in time with respect to the scheduling order; 3) the case had been pending a long time; 4) the trial date had been set; 5) there was nothing in defendant's answer requesting arbitration. *Id.* None of these factors is present in this dispute.

The Wisconsin Supreme Court, also in *Meyer,* cited the general rule regarding waiver of arbitration:

> (A)ny conduct of the parties inconsistent with the notion that they treated the arbitration provision as in effect, or any conduct which might be reasonably construed as showing that they did not intend to avail themselves of such provision, may amount to a waiver thereof and estop the party charged with such conduct from claiming its benefits.

*Id.* at 392, 507 N.W.2d 149 (quoting *City of Madison v. Frank Lloyd Wright Found.,* 20 Wis.2d 361, 387, 122 N.W.2d 409, 423 (1963)). It cannot be said that Chicago Title in this instance has acted in a manner inconsistent with a desire to arbitrate this dispute.

Chicago Title made it very clear from the outset that it intended to avail itself of the arbitration clause. In Chicago Title's answer

at paragraph two, it expressly noted that it believed the dispute was covered by the arbitration clause of the title insurance policy. Chicago Title's motion to compel arbitration was filed less than ten days after the answer and cross complaint.

Admittedly, Chicago Title did answer on the merits and cross complain against defendants Paul R. Lynts and WILMIC. Fleet cites *State ex rel. Carl v. Charles*, 71 Wis.2d 85, 90–91, 237 N.W.2d 29, 31–32 (1976) in which the Wisconsin Supreme Court held that answering on the merits and asking for a dismissal of the action constituted a waiver. *Charles* can be distinguished, however, because in that case, neither party ever asked the court to compel arbitration. *Id.* at 90, 237 N.W.2d 29. The only actions taken by the party were an answer on the merits and a motion to dismiss. *Id.* The *Charles* holding is inapposite because here, Chicago Title has clearly asked for the arbitration clause to be applied.

The Wisconsin Court of Appeals has stated that "(u)p to the point of trial, arbitration remains a viable alternative to litigation. However, at the point of trial, where a decision on a substantive issue is made, the goals of arbitration no longer prevail." *J.J. Andrews Inc. v. Midland,* 164 Wis.2d 215, 224, 474 N.W.2d 756, 759–60 (Ct.App.1991). The present case has not progressed to the point where the goals of arbitration no longer prevail. To hold that Chicago Title waived its right to arbitration merely because it titled its brief a "motion to dismiss" rather than a "motion to stay the proceedings" would be to favor form over substance and would be contrary to Wisconsin public policy. Clearly, Chicago Title has, at all stages of this case, taken the position that arbitration is the proper method of resolving its dispute with Fleet Mortgage. Thus, Chicago Title's actions do not rise to the level of a waiver.

Accordingly, the court concludes that the dispute is covered by the arbitration clause of the title insurance policy; and that Chicago Title did not waive its right to compel arbitration.

IT IS THEREFORE ORDERED THAT:

Pursuant to Wisconsin Statutes § 788.02, the proceedings between Fleet Mortgage Corporation and Chicago Title Insurance Company are stayed until the completion of the arbitration process.

The court will conduct a telephone status conference with counsel for all parties on **Thursday, March 16, 1995 at 8:30 a.m.** to discuss arbitration procedures and further scheduling, if any, in this case.