Madison Metropolitan School District, and others, Petitioners-Appellants, v. Wisconsin Employment Relations Commission, Respondent: Madison Teachers Inc., Intervenor-Respondent.

Court of Appeals

*No. 77–614. Argued August 30, 1978.—Decided October 9, 1978.*
(Also reported in 271 N.W.2d 314.)

Before Gartzke, P.J., Bablitch and Dykman, JJ.

For the appellants there was a brief by *Henry A. Gempeler,* city attorney, and *Gerald C. Kops,* assistant city attorney, and oral argument by *Gerald C. Kops,* assistant city attorney.

For the respondent (WERC) there was a brief by *Bronson C. La Follette,* attorney general, and *John D. Niemisto,* assistant attorney general.

For the intervenor-respondent there was a brief by *Robert C. Kelly* and *Kelly and Haus,* and oral argument by *Robert C. Kelly* of Madison.

GARTZKE, P. J.   This is an appeal from a judgment of the Circuit Court for Dane County which dismissed the petition by the appellant Madison Metropolitan School District from an order of the respondent Wisconsin Employment Relations Commission (WERC) which directed the school district to comply with an arbitration award. The award was upon a grievance, filed by Madison Teachers Incorporated (MTI) against the school district and submitted to arbitration pursuant to the terms of a collective bargaining agreement. MTI intervened in the action before the circuit court and is a respondent here on appeal.

The Madison public school system was restructured for the 1971–72 school year. This required alteration of the boundaries of the Cherokee Middle School and busing approximately 400 students daily to and from Cherokee.

The arrival of these students in the morning presented no safety problem as the buses arrived at staggered times. The principal of Cherokee became concerned over potential danger presented by their departure in the afternoon. Six or seven buses lined up outside the school at 3:15 p.m. each day and all 400 children would board. To protect the safety of the students and maintain order, the principal unilaterally assigned teachers to supervise and assist children during boarding.

Bus duty was first assigned to teachers during the 1971–72 school year. A rotation plan was developed making each teacher responsible for supervising bus loading for ten to fifteen minutes per day for one week, twice each school year. This rotation plan continued in effect until 1975.

MTI filed a grievance in early 1975 alleging that unilaterally assigned bus duty violated the collective bar-

gaining agreement between MTI and the school district. The grievance was submitted to arbitration.

The collective bargaining agreement provisions deemed to be of importance by the parties and the arbitrator are set forth in footnote 1.[1]

The arbitrator found that the agreement did not deal specifically with the assignment of bus duty but portions of the agreement could be construed as precluding the school district from making such duty mandatory. He found that bus duty was an extra curricular activity requiring compensation for those teachers who volunteered for it. The arbitrator also concluded that bus loading supervision is not within the scope of teachers' employment or reasonably related to their professional service and therefore must be negotiated.

The award enjoined the school district from imposing on teachers the duty to assist with or supervise in the loading or boarding of buses stationed at or near school premises and provided that teachers could volunteer for

[1] I–A(1). The Board of Education on its own behalf hereby retains and reserves unto itself, all powers, rights, authority, duties and responsibilities conferred upon and vested in it by applicable law, rules, and regulations to establish the framework of school policies and projects including, (but without limitation) because of enumeration, the right:

. . .

(c) To establish and supervise the program of instruction and to establish and provide supervision under agreed upon rules for such programs of an extra-curricular nature as the Board of Education feels are of benefit to students.

III–M(1). Teachers performing in a professional extra duty situation as listed on the extra duty compensation schedule shall be paid a percent of one of three base rates.

. . .

(3) A schedule for teacher supervision at athletic events, social activities and other school related functions is effective 1–1–71. Positions covered in this schedule are not subject to progression from Base 1 to Base 3 and previous experience is not calculated.

(a) All employment shall be voluntary. No position shall require assignment of teachers.

such duty for compensation according to rates to be negotiated.

The school district rejected the award. The collective bargaining agreement between the parties makes an arbitration award "final and binding." MTI filed a complaint with WERC, charging the school district with committing a prohibited practice in violation of sec. 111.-70(3)(a)5, Stats.[2] The school district answered to the effect that the arbitrator had exceeded the powers conferred upon him by the collective bargaining agreement.

The Commission appointed an examiner to hear the matter, pursuant to secs. 111.70(4)(a) and 111.07(1) and (5), Stats.

The examiner applied the standards of sec. 298.10, Stats.,[3] in reviewing the award. He found that the award

[2] Sec. 111.70(3(a) provides, It is a prohibited practice for a municipal employer individually or in concern with others.

. . .

5. To violate any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours and conditions of employment affecting municipal employees, including an agreement to arbitrate questions arising as to the meaning or application of the terms of a collective bargaining agreement or to accept the terms of such arbitration award, where previously the parties have agreed to accept such award as final and binding upon them.

[3] Sec. 298.10 provides, (1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

(a) Where the award was procured by corruption fraud or undue means;

(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

was based on the arbitrator's interpretations of Article I–A(1)(c) and Article III–M of the agreement. Since the award was "drawn from the essence" of the agreement, the award was held enforceable. The examiner ordered the school district to comply with the terms of the arbitration award.

The school district petitioned WERC for reconsideration of the findings, conclusions and order of the examiner. WERC affirmed the examiner.

May 5, 1977, the school district filed a petition for review of the commission's order in the Circuit Court for Dane County. The school district contended that the commission had erroneously interpreted sec. 298.10(1)(d) and that a proper interpretation would compel the WERC order be set aside and the arbitrator's award vacated pursuant to sec. 227.20(5) and (8), Stats.[4]

The circuit court affirmed the order of the commission finding the reasoning of the arbitrator was not a "perverse misconstruction" of the contract or in "manifest disregard of the law." The school district appeals from that judgment.

---

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matters submitted was not made.

[4] Sec. 227.20(5) provides, The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law.

Sec. 227.20(8) provides, The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion delegated to the agency by law; is inconsistent with an agency rule, an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise in violation of a constitutional or statutory provision; but the court shall not substitute its judgment for that of the agency on an issue of discretion.

The issues are:

1. What is the standard of review in an appeal from WERC's order finding that the school district committed a prohibited practice within the meaning of the Municipal Employment Relations Act by its refusal to comply with the arbitration award?

2. Should the arbitration award be vacated on the ground that the arbitrator exceeded his powers as set forth in sec. 298.01(1)(d), Stats.?

## I

## STANDARD OF REVIEW

WERC emphasizes that this action involves a review of the commission's order under the Administrative Procedure Act, sec. 227.20, rather than direct review of an arbitration award under Ch. 298, and that the commission applied the standards of sec. 298.10 in its determination that appellant committed a prohibited practice.

The procedural history of this case was as follows: Sec. 111.70(3)(a)5 of the Municipal Employment Relations Act makes it a prohibited practice for an employer to violate a collective bargaining agreement, including an agreement to accept the terms of an arbitration award. Sec. 111.70(4)(a) provides that sec. 111.07 governs procedure in cases involving prohibited practices. Sec. 111.-07(2), (4), (5) and (7), in this context, permit filing a complaint with WERC charging a prohibited practice, reference of the matter by WERC to an examiner for findings and an order, petition for review by WERC of the examiner's findings and order, and issuance of an order by WERC either dismissing the complaint or requiring the person complained of to cease and desist or to take affirmative action. Subsection (7) permits the WERC to petition the circuit court for enforcement of its

order and subsection (8) provides that the order is also subject to Ch. 227 review, the latter alternative having been chosen by the school district.

█

WERC contends that the issue before us is not, as the school district argues, whether the arbitrator exceeded his authority under sec. 298.10 (1), but whether WERC's application of Ch. 298 is reasonable and consistent with the purposes of the law. The Supreme Court has held in cases not involving arbitration awards that the commission's determination will be affirmed if it "is neither without reason nor inconsistent with" an act the commission is charged with enforcing and due weight must be given to the "experience, technical competence, and specialized knowledge of the agency involved." *Milwaukee v. WERC,* 71 Wis.2d 709, 714, 239 N.W.2d 13 (1976), *Muskego-Norway C. S. J. S. C. No. 9 v. W. E. R. B.,* 35 Wis.2d 540, 562, 151 N.W.2d 617 (1967).

WERC asserts that if no weight is given to its decision, no purpose is served in giving it authority to enforce arbitration awards through prohibited practice proceedings. WERC points out that unless its application of Ch. 298 when reviewing an arbitrator's award is accorded finality by the reviewing court, the wrong-doer can delay review by awaiting the commission's order and then appealing to the court for, what is in effect, a new trial on the merits. Sec. 298.13 requires that notice of a motion to vacate an arbitrator's award must be served on the adverse party within three months after the award is filed or delivered. WERC argues a party may circumvent this jurisdictional time limit by following the tack taken by the school district in the instant case and this should not be judicially condoned.

█

WERC's argument points up the dilemma caused by different avenues of review available to parties to arbitration of municipal employee grievances. A party may apply directly to circuit court within one year after the

award for an order confirming the award or may apply within three months after the award is filed or delivered to vacate the award. Secs. 298.09 and 298.13. The court in reviewing the award pursuant to these motions applies the standards of sec. 298.10(1). In the alternative, if one party refuses to comply with the award, a complaint may be filed with WERC, which also applies the standards of sec. 298.10(1). WERC may then apply to the circuit court for enforcement of its order affirming the award, or either party may challenge the commission's order in circuit court under Ch. 227. Sec. 111.07(7) and (8). If the judicial standard of review is not the same for both alternatives, forum shopping may result.

As long as the legislature does not establish a single method of reviewing arbitration awards made pursuant to municipal collective bargaining agreements, one standard of review should be applied in the courts.[5] *WERC v. Teamsters Local No. 563*, 75 Wis.2d 602, 610, 250 N.W.2d 696 (1976), settled the matter when it held, "In reviewing the WERC's order (to comply with an arbitration award), the circuit court was, in essence, reviewing the award of an arbitrator and must follow the statutory standards for court review of arbitration awards."

## II

## AWARD NOT IN EXCESS OF POWERS

The school district charges that the award must be vacated because the arbitrator exceeded his powers.

---

[5] This situation merits the attention of the legislature. While forum shopping should not be tolerated, the present system gives no weight to an application of sec. 298.10(1) standards by an examiner and a second application of those same standards by the WERC. It permits a third application by the circuit court and a fourth application by this court. A fifth application is possible upon review by the Supreme Court.

Sec. 298.01(1)(d) requires us to vacate the award if that is the case.

An arbitrator obtains his authority from the agreement between the parties. *WERC v. Teamsters Local No. 563,* 75 Wis.2d 602, 611, 250 N.W.2d 696 (1976). The agreement provides that if a "grievance remains unresolved" MTI "may call for compulsory, final and binding arbitration." The agreement defines a grievance as "a dispute concerning the interpretation or application of any of the terms of . . ." the agreement regarding salaries, hours, or other conditions of employment. The dispute is over the right of the principal to assign Cherokee Middle School teachers to supervise pupils boarding buses stationed at or near the school premises.

The question before us is whether the arbitrator confined himself to interpretation or application of the agreement. The arbitrator "does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960), quoted in *Milwaukee Firefighters Local 215 v. Milwaukee,* 78 Wis.2d 1, 21, 253 N.W.2d 481.

"Judicial review of arbitration awards is very limited. The strong policy favoring arbitration as a method for settling disputes under collective bargaining agreements requires a reluctance on the part of the court to interfere with an arbitrator's award upon issues properly submitted . . ." *Milwaukee Professional Firefighters v. Milwaukee,* 78 Wis.2d 1, 21, 22, 253 N.W.2d 481 (1976).

". . . The court will not relitigate issues submitted to arbitration. The parties contracted for the arbitrator's decision, not the court's.

. . . .
The decision of an arbitrator cannot be interfered with for mere errors of judgment as to law or fact. Courts will overturn an arbitrator's award if there is a perverse misconstruction or if there is positive misconduct plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy. *Jt. School District No. 10 v. Jefferson Ed. Assoc.*, 78 Wis.2d 94, 116–118, 253 N.W.2d 536 (1977).

The agreement is silent regarding bus duty. That silence does not deprive the arbitrator of authority to arbitrate the dispute. A collective bargaining agreement

[i]s more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.
. . . .
Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. *United Steelworkers v. Warrior & G. Nav. Co.*, 363 U.S. 574, 578, 581 (1960).

The arbitrator correctly noted in the first half of his discussion a number of duties in the agreement which teachers may undertake on a voluntary basis such as supervision at athletic, social and other school related functions of a non-academic nature, including lunchroom duty and noon hour supervision. A number of other positions (timers, scorers, scoreboard operators, announcers, field judges, line judges) are referred to in the agreement as not requiring "a teacher, as such, and the Board will seek lay personnel not covered in this Agreement for those positions. . ." The arbitrator inferred that the parties recognized that certain activities require teacher supervision and others do not. He posed the

question whether the parties intended to permit the Board of Education to unilaterally assign all other work not described in the agreement and concluded that discretion to make such assignments could not have been left to the principals of each school in the system, the other principals not having made the assignments made by the principal at Cherokee. The arbitrator decided that the parties covered this area of negotiations by providing that the board may "provide supervision under *agreed upon* rules for such programs of an extra-curricular nature as the Board of Education feel are of benefit to students." [Emphasis added.] (See footnote). Bus duty, therefore, could not be imposed upon teachers until the parties negotiated and then "agreed upon the rules for such program." The award enjoined the Madison School Board and the principal of Cherokee from imposing the duty.

The school district argues that the arbitrator's interpretation is "perverse" in view of failure of MTI to challenge past bus duty assignments, failure of MTI when finally claiming a violation to rely upon the contractual provisions cited by the arbitrator, failure of the board to submit evidence at the hearing regarding the meaning of provisions relied on by the arbitrator. *In Re S&W Fine Foods, Inc.*, 185 N.Y.S.2d 1021, 1023 (1959), applying a New York statute similar to sec. 298.10, states that a perverse misconstruction "must be more than an egregious error of law." It "must be one which is so divorced from rationality that it can be accounted for only by one of the kinds of misbehavior recited in" that New York statute. We find the arbitrator's analysis is not perverse. The school district contends that the award violates the principles of contract construction. Some erroneous applications of law justify overturning an award, such as arbitrating pursuant to a provision violating an ordinance. *WERC v. Teamsters Local No. 563,*

75 Wis.2d 602, 250 N.W.2d 696 (1976). That is not true of possible misapplication of the principles of contract interpretation. "While this court may disagree with the interpretation of the contract reached by the arbitrator, we will not substitute our judgment for that of the arbitrator. The parties contracted for the arbitrator's settlement of the grievance and that is what they received." *Dehnart v. Waukesha Brewing Co.*, 17 Wis.2d 44, 51, 115 N.W.2d 490 (1961).

The school district contends that the arbitrator improperly relied in the second half of his discussion upon an award in *Teaneck N. J. Board of Education v. Teaneck Teachers Association,* reported in 71-1 ARB 8183 (CCH Arbitration Awards). In that case the arbitrator based an award upon his view as to where "teaching functions end and security activities begin" and held that a school board could not compel teachers to patrol school hallways and lavatories. The arbitrator in the case before us relied upon the *Teaneck* decision for a principle which in his view required the conclusion that the performance of security functions as may be required in bus loading supervision takes teachers beyond their professional classification.

The arbitrator does not purport to find that principle in the collective bargaining agreement between MTI and the school district. It approaches a personal "brand of industrial justice." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597. The next arbitrator may have an opposite view. Awards so based are beyond the power of an arbitrator, contrary to sec. 298.01(1)(d).

It is not this court's function to decide whether the conception expressed by the arbitrator is correct.

The arbitrator found particular duties to be beyond the parties' contractual conception of the role of the

teacher in the first half of his discussion when he found that the parties to the contract recognized certain activities required either teacher or non-teacher supervision. The award is affirmed on that ground.

*By the Court.*—Judgment affirmed.