CITY OF MADISON, Petitioner-Respondent,

v.

AFSCME, AFL–CIO, LOCAL 60, Appellant.†

Court of Appeals

*No. 83–152. Submitted on briefs February 27, 1984.—*
*Decided April 18, 1985.*
(Also reported in 369 N.W.2d 759.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Richard V. Graylow* and *Lawton & Cates* of Madison.

For the petitioner-respondent the cause was submitted on the brief of *Henry A. Gempeler*, city attorney, and *John E. Rothschild,* assistant city attorney.

Before Gartzke, P.J., Dykman, J. and Rudolph T. Randa, Reserve Judge.

DYKMAN, J.[1]  AFSCME, AFL–CIO, Local 60, appeals an order vacating an arbitration award. The circuit court vacated the award because it violated public policy and infringed statutorily and contractually re-

---

[1] By order of the Chief Justice, the writing of this opinion was reassigned from Bablitch, J. to the author.

served management rights. Because the award did not exceed the arbitrator's authority, violate public policy, or infringe reserved management rights, we reverse.

AFSCME and the city of Madison were parties to a collective bargaining agreement. The city ordered an animal control officer and two police dispatchers not to report to duty on January 1, 1981, though this was a normally scheduled duty day.[2] The employes were therefore unable to earn triple pay for January 1, and their union, AFSCME, filed a grievance.

An arbitrator was appointed. She found the agreement clearly and unambiguously gave the city the right to decide staff levels and modify work schedules. She also found that the provision pertaining to staff levels and work schedules had been included in the parties' agreements since 1973, and the city's practice had been to permit employes to request not to work on holidays rather than to order employes not to work on holidays. She found that this practice was well established, and the city had made no effort to discontinue it through bargaining. She concluded that the custom had become part of the agreement, and the city had therefore violated the agreement by ordering the employes not to work on holidays. She ordered the city to compensate the employes for the pay lost by not working on the holidays.

The city petitioned the circuit court to vacate the award under secs. 788.10 and 788.11, Stats.[3] AFSCME

[2] The animal control officer was also ordered not to report for duty on December 25, 1980.

[3] Section 788.10, Stats., provides:

(1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

(a) Where the award was procured by corruption, fraud or undue means;

(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

petitioned the court to confirm the award under sec. 788.09.[4] The circuit court vacated the award because, as a matter of public policy, economically motivated staffing level reductions, like economically motivated layoffs of public employes, are primarily related to the exercise of reserved municipal powers, citing *City of*

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

(2) Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

Section 788.11, provides:

(1) In either of the following cases the court in and for the county wherein the award was made must make an order modifying or correcting the award upon the application of any party to the arbitration:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

(b) Where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted;

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

(2) The order must modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

Prior to 1979, ch. 788 appeared in the statutes as ch. 298; sec. 64, ch. 32, Laws of 1979 renumbered ch. 298 as ch. 788.

[4] Section 788.09, Stats., provides:

At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected under secs. 788.10 or 788.11. Notice in writing of the application shall be served upon the adverse party or his attorney 5 days before the hearing thereof.

*Brookfield v. WERC*, 87 Wis. 2d 819, 275 N.W.2d 723 (1979).

The issue whether the award infringed on a statutorily reserved municipal management right involves the relationship between sec. 111.70(1)(d), Stats. (1979–80), which governs a municipality's duty to collectively bargain with its employes, and ch. 62, Stats., which vests municipalities with management prerogatives. Whether public policy permits unilateral economically motivated staffing level reductions also involves those statutes. The determination of the relationship between two state statutes is within the special competence of the courts. Our review of that determination is *de novo*. *Glendale Prof. Policemen's Asso. v. Glendale*, 83 Wis. 2d 90, 100–01, 264 N.W.2d 594, 600 (1978).

Section 788.10(1)(d), Stats., provides that a court must make an order vacating an award "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." In *Nicolet HS Dist. v. Nicolet Ed. Ass'n*, 118 Wis. 2d 707, 712–13, 348 N.W.2d 175, 178 (1984), the court said:

This court has developed several well-settled rules governing review of arbitrators' decisions. An arbitrator's award is presumptively valid, and it will be disturbed only when its invalidity is demonstrated by clear and convincing evidence. [Citation omitted.] Furthermore, our review is quite limited in scope. As we noted in *Oshkosh v. Union Local 796–A*, 99 Wis. 2d 95, 299 N.W.2d 210 (1980):

"This court's acceptance of the *Steelworker's Trilogy* in the case of *Denhart v. Waukesha Brewing Co.*, 17 Wis. 2d 44, 115 N.W.2d 490 (1962), is indicative of a policy of limited judicial review in cases involving arbitration awards in labor contract disputes. A final and binding arbitration clause signifies that the parties to a labor contract desire to have certain contractual disputes determined on the merits by an impartial decision-maker whose determination the parties agree to

accept as final and binding. Great deference is paid to the arbitrator's award as the product of the initial bargain of the parties. Therefore, the court's function in reviewing the arbitration award is *supervisory* in nature. The goal of this review is to insure that the parties receive what they bargained for. *Milwaukee Pro. Firefighters Local 215 v. Milwaukee,* 78 Wis. 2d 1, 22, 253 N.W.2d 481 (1977).

The parties bargain for the judgment of the arbitrator—correct or incorrect—whether that judgment is one of fact or law." (footnotes omitted) (emphasis in original). [*Oshkosh v. Union Local 796–A,* 99 Wis. 2d 95, 103, 299 N.W.2d 210, 214–15 (1980).]

". . . We therefore must uphold the arbitrators' decision as long as it is within the bounds of the contract language, regardless of whether we might have reached a different result under that language, and does not violate the law."

■

Where a contract term can rationally be viewed as ambiguous, an arbitrator does not alter or modify the contract by using the common law of the plant rather than the ambiguous term to resolve the labor dispute. *Oshkosh v. Union Local 796–A,* 99 Wis. 2d 95, 106 n. 8, 299 N.W.2d 210, 216 (1980).

■

The arbitrator found the contract silent regarding revision of schedules to avoid the expense of holiday pay. We conclude that she did not alter or modify the contract by drawing on past practice.

*Statutorily Reserved Municipal Management Rights*

■

The circuit court found that the arbitrator's award ran counter to statutorily reserved municipal management rights. It cited sec. 62.11(5), Stats., which provides in part:

Except as elsewhere in the statute specifically provided, the council shall have the management and con-

trol of the city property, finances . . . and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by . . . necessary or convenient means. The powers hereby conferred shall be in addition to all other grants and shall be limited only by express language.

However, sec. 111.70(1) (d), Stats. (1979–80), specifically provides that municipal employers have a duty to bargain wages, hours and conditions of employment. In *Glendale*, 83 Wis. 2d at 103–04, 264 N.W.2d at 601, the court held that sec. 111.70 should be harmonized with other statutes whenever possible and that the provisions of sec. 111.70 could modify preexisting statutes. The court affirmed the city's relinquishment, by its collective bargaining agreement, of some of the discretion given the police chief and board by chapter 62, Stats. *Id.* at 107, 264 N.W.2d at 603.

A city may not collectively bargain a contract provision that violates a specific statute. *Drivers, etc., Local No. 695 v. WERC*, 121 Wis. 2d 291, 298, 359 N.W.2d 174, 178 (Ct. App. 1984). Neither party contends that the city's collective bargaining agreement violates any specific statute and cannot be harmonized with the statutory duty to bargain. The city could permissibly limit the scope of its management discretion by agreeing that it would not reassign employes whose scheduled duty days fell on holidays. The arbitrator's award requiring this result does not contravene sec. 62.11(5), Stats.

### Public Policy

Despite a policy of deference to arbitration decisions, a court may vacate the award because of the arbitrator's misconduct, or where the award "evinces a perverse misconstruction of the collective bargaining agreement,"

or where the award "is illegal or violates strong public policy." *Arbitration Between West Salem & Fortney,* 108 Wis. 2d 167, 172, 321 N.W.2d 225, 229 (1982).

Here, the circuit court was persuaded by the following holding in *Brookfield,* 87 Wis. 2d at 830, 275 N.W.2d at 728: "[E]conomically motivated lay offs of public employees resulting from budgetary restraints is a matter primarily related to the exercise of municipal powers and responsibilities and the integrity of the political processes of municipal government." However, the *Brookfield* decision involved a determination as to whether a layoff was a mandatory subject of bargaining. Whether the scheduling at issue had to be bargained is not a question here.

The circuit court correctly stated that the city should not be prevented from eliminating a past practice because of fiscal policy. The city has the power to manage and control its finances pursuant to sec. 62.11(5), Stats., (governing municipal powers over finance). Its actions, however, are limited by its collective bargaining agreement. Though the trial court found that the city was laboring under tight budgetary constraints, that factual question was not before the arbitrator. No evidence of the extent of those constraints is of record. Even a statutory power may be limited by an agreement, particularly in employment relations. *West Salem, supra,* 108 Wis. 2d at 174, 321 N.W.2d at 230.

"Public policy is a broad concept embodying the community common sense and common conscience." *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 573, 335 N.W.2d 834, 840 (1983). "Courts should proceed cautiously when making public policy determinations." *Id.* What constitutes waste in government is often a political question. Because of the great deference we pay to an arbitrator's award, we should hesitate to overturn an

award on our view of public policy, particularly in the absence of evidence as to the exigency of the city's financial condition.

We conclude that the facts of record do not permit a conclusion that the arbitrator's award should be set aside because it violates public policy. Accordingly, we reverse.

*By the Court.*—Order reversed.