CITY OF MADISON, Petitioner-Respondent,

v.

LOCAL 311, INTERNATIONAL ASSOCIATION
OF FIREFIGHTERS, AFL-CIO; Appellant.†

Court of Appeals

*No. 85-0688. Submitted on briefs May 23, 1986.—Decided
August 21, 1986.*

(Also reported in 394 N.W.2d 766.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Richard V. Graylow* and *Lawton & Cates* of Madison.

For the petitioner-respondent the cause was submitted on the brief of *Henry A. Gempeler*, city attorney, and *Larry W. O'Brien*, assistant city attorney.

Brief of amicus curiae was filed by *Bruce Meredith* of Madison on behalf of Wisconsin Education Association Council.

Brief of amicus curiae was filed by *Simon Karter* and *Kelly, Haus & Katz* of Madison on behalf of Madison Teachers Incorporated.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J.· Firefighters Local 311 appeals from a judgment vacating an arbitrator's award. The arbitrator directed the City of Madison to notify the union that members of the Fire Department represented by it need not live in the city as a condition of employment. The primary issue is whether the arbitrator manifestly disregarded the law. We conclude he did not and reverse.

Article 25 of the city's labor agreement with Firefighters Local 311 provides:

> All members of the Fire Department shall be required to live within the City limits as a condition of employment. However, in the event that the City

waives the City residency requirement for any group of employees, the requirement for members of the Fire Department shall be deemed to be waived.

A Madison ordinance provides: "No person shall be eligible for ... employment ... as an ... employee ... unless he shall reside in the City of Madison unless permission to reside outside of the city of Madison shall be expressly granted by the Mayor."

November 15, 1983, the city council ratified a labor agreement with another union, Teamster's Local 695. Article 31 of the Teamster's agreement provides:

The City and the Union agree that all employees employed on or before the 31st day of October, 1983, shall not be subject to any Ordinance requiring residency in the City of Madison as a condition of employment ....

A Firefighter member filed a grievance claiming that the city had waived its residency requirement for a group of city employees and therefore the residency requirement in the Firefighter agreement no longer applies. The city claimed that it did not waive the residency requirement for the Teamsters.

The basis for the city's argument is as follows: Starting in 1970 the city received federal aid to purchase and operate Madison's bus system. The aid was supplied through the Urban Mass Transit Act (UMTA), 49 U.S.C. sec. 1601 *et seq.* Section 13(c) of UMTA, located at 49 U.S.C. sec. 1609, provides:

It shall be a condition of any assistance under ... this title that fair and equitable arrangements are made, as determined by the Secretary of Labor, to protect the interests of employees affected by such assistance. Such protective measures shall include, without being limited to, such provisions as may be

necessary for (1) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise; . . .

Agreements made to provide for the "arrangements" referred to by the statute are known as "13(c) agreements."

The Teamsters represented the bus system employees before they were considered city employees. Since 1970 the city and the Teamsters have entered 24 "13(c) agreements." Each of the first 23 "13(c) agreements" contained the following statement:

No employee represented by the Union who is employed by the Company on the date of acquisition of the transit system under the project shall suffer any limitation upon his freedom to choose his place of residence as a result of the project.

Consequently, no residency requirement was imposed on a bus system employee by virtue of the first 23 agreements.

After the 23rd agreement, the city and the Teamsters agreed that the bus system employees were city employees. The 24th agreement, ratified November 15, 1983 by the city council, therefore brought into play the ordinance which requires city employees to live in the city. That agreement contains Article 31, quoted above, which the Firefighters contend waived the residency requirement provided in the ordinance as to the Teamsters.

The city argued to the arbitrator that it was forced to concede to the Teamsters an exception to the residency requirement in the ordinance. The city asserts it was compelled to do so because sec. 13(c) of UMTA

189

preempted the ordinance. The city argued it therefore did not waive the residency requirement in its agreement with the Firefighters.

The arbitrator found that the city waived the residency requirement in the Firefighter agreement because it waived the requirement for the Teamsters. The city appealed to the circuit court, arguing that the arbitrator exceeded his powers by assuming that the Madison ordinance could supersede a federal law. The court agreed. It held that the arbitrator had manifestly disregarded the law by assuming that the ordinance took precedence over an agreement reached under sec. 13 of UMTA. The court vacated the award pursuant to sec. 788.10(1)(d), Stats.[1]

■

The scope of our review of the arbitrator's decision is the same as the trial court's. *Glendale Prof. Policemen's Asso. v. Glendale*, 83 Wis.2d 90, 100–01, 264 N.W.2d 594, 600 (1978). We review the arbitrator's award without deference to the trial court's decision.

■

Our function is to insure that the parties received the arbitration they bargained for. *Milw. Pro. Firefighters Local 215 v. Milwaukee*, 78 Wis.2d 1, 22, 253 N.W.2d 481, 491 (1977); *Madison v. AFSCME, AFL-CIO, Local 60*, 124 Wis.2d 298, 303, 369 N.W.2d 759, 762 (Ct. App.

---

[1] Section 788.10(1), Stats., provides in part:

In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

. . . .

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

1985). The arbitrator's award will not be overturned for mere errors of judgment on the law, unless "manifest disregard of the law" has occurred. *Jt. School Dist. No. 10 v. Jefferson Ed. Asso.*, 78 Wis.2d 94, 117, 118, 253 N.W.2d 536, 547 (1977).

Under one view, "manifest disregard of the law" means that the arbitrator understood and correctly stated the law but ignored it. *Siegel v. Titan Indus Corp.*, 779 F.2d 891, 893 (2d Cir. 1985). According to G. Wilner, *Domke on Commercial Arbitration* sec. 25.05, at 397 (rev. ed. April 1985), "Such a situation rarely occurs in practice."

Nothing of the sort occurred here. First, the arbitrator simply assumed that the federal law did not preempt the ordinance. Second, an arbitrator cannot be said to have manifestly disregarded the law if substantial authority sustains the arbitrator's assumption as to the law. This is true, whether or not we agree with the assumption.

Respectable authority exists for the proposition that sec. 13(c) of UMTA does not preempt state law. *See Local Div. 589, Etc. v. Comm. of Mass.*, 666 F.2d 618, 627 (1st Cir. 1981), *cert. denied*, 457 U.S. 1117 (state law prevails over sec. 13(c)). *See also Jackson Transit Authority v. Transit Union*, 457 U.S. 15, 27 (1982) *(dicta)* (sec. 13c does not supersede state law). Indeed, the city cites no case law to the contrary.[2]

---

[2] Weak support exists for the city's position. *See Div. 1287 v. Kansas City Area Transp.*, 485 F.Supp. 856, 863, 864 (W.D. Mo. 1980) (if local law conflicts with 13(c) agreement, local law does not apply). *Local Div. 589 Etc. v. Comm. of Mass.*, refused to follow *Div. 1287* on grounds that the latter case did not consider the preemption issue in depth.

Having concluded that the arbitrator did not manifestly disregard the law, we need not decide whether sec. UMTA preempts the Madison residency ordinance.

The city suggests waiver did not occur because the city and the Teamsters negotiated with the mutual understanding that the federal law preempted the ordinance. The city's briefs to the arbitrator do not contain that argument. The arbitrator cannot be said to have erred for having not considered a contention never made.

*By the Court.*—Judgment reversed and cause remanded with directions to reinstate the award. No costs to either party.