IN RE the ARBITRATION OF a DISPUTE BETWEEN:

DANE COUNTY, Appellant,

v.

DANE COUNTY UNION LOCAL 65, AFSCME, AFL-CIO,
Respondent.

Court of Appeals

*No. 96–0359. Submitted on briefs November 12,
1996.—Decided April 17, 1997.*

(Also reported in 565 N.W.2d 540.)

268

270

For the appellant the cause was submitted on the briefs of *Robert M. Hesslink, Jr. and Natalie M. King* of *Hesslink Law Offices, S.C.* of Verona.

For the respondent the cause was submitted on the brief of *Bruce F. Ehlke* of *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer* of Madison.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J. Dane County appeals the circuit court's retention of jurisdiction and its confirmation of Stanley H. Michelstetter's arbitration award, which ordered the County to reinstate Douglas Lee to his former position, or to a substantially equivalent position, and to make Lee whole for all lost wages and benefits from December 9, 1991 to the date of Lee's reinstatement. We affirm the court's exercise of jurisdiction and the arbitrator's conclusion that Lee was not discharged for good cause. However, we reverse and vacate the remedy, in part, as it relates to payment for lost wages and benefits prior to November 18, 1992, the date on which Lee provided the release to work required under § 13.03(a)3 of the Collective Bargaining Agreement.

## BACKGROUND

Lee began employment as a highway laborer with Dane County in October of 1989. He performed the duties of his job satisfactorily until August 7, 1991, when he fell injuring his back. Lee was off work for two weeks and then attempted to return to a temporary position that had a twenty-pound lifting restriction. After three days, Lee brought in a statement from his

physician saying that the work was too physically demanding.

On October 25, 1991, when Lee was still unable to perform the duties of a laborer, he met with County representatives who told him that given his existing physical limitations, they could not accommodate him in the laborer's job. Lee then made a written request to be placed on disability leave. His request was granted. Lee remained on disability leave until April 25, 1992, when disability layoff began.

On April 22, 1992, just prior to the end of his disability leave, Lee was examined by his physician, Dr. Woodford, who gave him a written release to return to his duties as a highway laborer. However, Lee did not provide this release to the County until November 18, 1992, when he filed a grievance for being placed on disability leave on October 25, 1991.

Upon the receipt of Dr. Woodford's return to work letter, the County offered Lee work as a highway laborer, but it conditioned the offer on Lee's dismissing his grievance, which Lee refused to do. On October 25, 1993, the eighteen months of disability layoff provided for in the Agreement ended and Lee was terminated. On November 11, 1993, Lee grieved his termination.

On March 30, 1994, Arbitrator Zel Rice dismissed the first grievance, which arose out of Lee's being placed on disability leave on October 25, 1991. Rice's decision was based on a specific finding that § 13.03(a)3 of the Agreement required Lee to provide a release to work from his physician before the County was required to reinstate him. He concluded that:

> The Employer had never permitted an employee who had been receiving worker's compensation to return to work without receiving a statement from

his doctor releasing him to return to work. . . . Since Lee had never submitted a physician's statement of release for work there was no basis in October or November of 1991 for selecting a third physician. Accordingly the Employer acted within the authority set forth in Article XIII, Section 13.03(a) when it placed Lee on disability leave in October of 1991 . . . .

. . . When the Union filed the grievance . . . it attached a release authorizing Lee to return to work on a trial basis that had been signed by Dr. Woodford. However that was long after the Employer had placed Lee on disability leave and was not a factor to be considered in determining whether or not the Employer violated the agreement when it placed him on disability leave.

Michelstetter was charged with arbitrating the grievance filed after Lee's termination. By stipulation, the scope of the arbitration was whether the employer violated the Agreement by terminating Lee's employment without just cause;[1] and if the answer was no, whether the employer violated the Agreement by refusing to reinstate Lee to his former position or a comparable position. And finally, if the answer to either the first or the second question was yes, then he was to determine an appropriate remedy. Michelstetter concluded that Lee was not discharged for just cause. He reasoned that,

(T)he prohibition of discharges without just cause applies not only to disciplinary, but at least some non-disciplinary situations as well . . . (including)

---

[1] The Agreement uses "good cause" as the standard the County must follow at termination, but Michelstetter paraphrased the County's obligation as "just cause." Because the parties appear to equate these terms, the court will also.

situations in which an employee is discharged for physical inability to perform his or her work . . . .

. . . .

Had the Employer received the release from Dr. Woodford dated April 22, prior to the expiration of the disability leave, it ultimately would have had no legitimate basis to refuse it.

He then interpreted § 13.03 of the Agreement as being "solely procedural" in nature and concluded Lee was "excused" from providing a release to work from his physician. And, even though he found there was "no definite way to determine" when Lee was fully "recovered," he ordered back pay from December 9, 1991 to the date of Lee's reinstatement.

The Union moved the circuit court to confirm the award and the County moved it to defer to the jurisdiction of WERC and to vacate or modify the award. The circuit court exercised its jurisdiction and confirmed the award. This appeal followed.

## DISCUSSION

### Standard of Review.

■

We review substantive arbitrability as a question of law, without deference to the arbitrator. *Joint School Dist. No. 10, City of Jefferson v. Jefferson Educ. Ass'n*, 78 Wis. 2d 94, 101-02, 253 N.W.2d 536, 540 (1977).

■

Aside from the issue of substantive arbitrability, the scope of our review of the arbitrator's decision is the same as the circuit court's and is conducted without deference to the circuit court's decision. *City of*

*Madison v. Local 311, Int'l Ass'n of Firefighters,* 133 Wis. 2d 186, 190, 395 N.W.2d 766, 768 (Ct. App. 1986). An arbitrator's decision is presumptively valid and is to be disturbed only when its invalidity is demonstrated by clear and convincing evidence. *City of Madison v. AFSCME, AFL-CIO Local 60,* 124 Wis. 2d 298, 302, 369 N.W.2d 759, 761 (Ct. App. 1985). This court's review of an arbitrator's award is essentially supervisory, wherein the court assures that the parties to the collective bargaining agreement receive that for which they bargained. *Lukowski v. Dankert,* 184 Wis. 2d 142, 149, 515 N.W.2d 883, 886 (1994).

**Deferral to WERC.**

The circuit court has jurisdiction to grant or to deny confirmation of an arbitration award. Section 788.09, STATS. When a prohibited practice complaint is filed with WERC alleging that an employer has refused to accept the terms of an arbitration award as final and binding, WERC also has jurisdiction to review the terms of the award. Section 111.70(4)(a) and (3)(a)5, STATS.; *Madison Metro. School Dist. v. Wisconsin Employment Relations Comm.,* 86 Wis. 2d 249, 256-57, 272 N.W.2d 314, 317 (Ct. App. 1978). When both a court and an administrative agency have jurisdiction over the subject matter in dispute, a question of primary jurisdiction arises. *McEwen v. Pierce County,* 90 Wis. 2d 256, 268, 279 N.W.2d 469, 474 (1979).

The County argues that its motion to vacate the arbitration award should be construed as a prohibited practice (i.e., a refusal to implement the arbitration award), creating concurrent jurisdiction for WERC and the circuit court. It argues that the circuit court erred when it retained jurisdiction, rather than deferring to

WERC because of WERC's expertise in labor areas. However, the record does not reflect that the Union ever filed a prohibited practice complaint; nor does the County point to any other mechanism by which it believes a party invoked WERC's jurisdiction.

The circuit court did not deal with this procedural deficiency in the County's argument, but rather it defined its decision on the motions as "purely [a] legal challenge to whether the arbitrator exceeded his authority." We agree the challenge of the County is legal in nature. And, we conclude that given the posture of this case, where the Union has not filed a prohibited practice complaint or in any other way invoked WERC's jurisdiction, the trial court appropriately decided the motions before it.

**Arbitrability.**

The concept of substantive arbitrability, whether the parties agreed to arbitrate a particular issue, is central to determining the jurisdiction of the arbitrator, as an arbitrator obtains authority from the agreement of the parties. *Joint School Dist. No. 10,* 78 Wis. 2d at 101-02, 253 N.W.2d at 540; *see* Elkouri & Elkouri, HOW ARBITRATION WORKS, 299-312 (5th ed. 1997). The County makes several arguments which draw into question the substantive arbitrability of the issues Michelstetter decided.

*1. Claim and Issue Preclusion.*

The County argues that claim preclusion and issue preclusion[2] require reversal of Michelstetter's award

---

[2] Recently, the supreme court has clarified the doctrine of res judicata, which it renamed "claim preclusion," and the doc-

because he went beyond the scope of the issues assigned. The County argues that in so doing, he overturned specific findings which were essential to Rice's award, *e.g.,* when Michelstetter concluded Lee had a right to return to work without providing a medical release from his doctor. This, the County argues, is in conflict with Rice's previous determination that the County had a contractual right to be provided with a written release for work from Lee's physician before Lee could return to work.

The County argues that claim preclusion and issue preclusion apply to arbitration proceedings, and because Michelstetter's decision overturns that portion of Rice's decision which determined that the County had a right to receive a release for work from Lee's doctor before he was entitled to work, it must be reversed. The County cites *Dehnart v. Waukesha Brewing Co.,* 21 Wis. 2d 583, 589, 124 N.W.2d 664, 667 (1963) and *Manu-Tronics, Inc. v. Effective Management Systems, Inc.,* 163 Wis. 2d 304, 310, 471 N.W.2d 263, 266 (Ct. App. 1991), in support of its legal contentions. The Union does not take issue with the County's legal premise, but asserts that the claims and the issues decided by the two arbitrators were different so the preclusion doctrines do not apply.

In a court proceeding, claim preclusion establishes that a final judgment between parties is conclusive for all subsequent actions between those same parties, as to all matters which were, or which could have been, litigated in the proceeding from which the judgment

---

trine of collateral estoppel, which it renamed "issue preclusion." *Northern States Power Co. v. Bugher,* 189 Wis. 2d 541, 549, 525 N.W.2d 723, 727 (1995). Therefore, we adopt the nomenclature established by the supreme court.

arose. *Munchow v. Goding*, 198 Wis. 2d 609, 622, 544 N.W.2d 218, 223 (Ct. App. 1995). Claim preclusion generally requires an identity of parties, but it can be applied to privies of parties as well. *Id.* Issue preclusion is a flexible doctrine that is bottomed in concerns of fundamental fairness and requires that one must have had a fair opportunity procedurally, substantively and evidentially to litigate the issue before a second litigation will be precluded. *Amber J.F. v. Richard B.*, 205 Wis. 2d 505, 515, 557 N.W.2d 84, 88 (Ct. App. 1996). Although issue preclusion does not require an identity of parties, it does require actual litigation of an issue necessary to the outcome of the first action. *Michelle T. v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327, 330 (1993); *Crowall v. Heritage Mut. Ins. Co.*, 118 Wis. 2d 120, 122 n.2, 346 N.W.2d 327, 329 n.2 (Ct. App. 1984). Issue preclusion can prevent re-litigation of issues actually determined in a prior lawsuit, even if the cause of action in the second suit is different from the first. *Id.* at 121 n.1, 346 N.W.2d at 329 n.1.

*Dehnart* and *Manu-Tronics* are cited to us by the County as authority for applying the preclusion doctrines in this case. However, both are cases in which *a court* was asked to apply an arbitrator's decision to preclude re-litigation of a claim or an issue *in court.* Neither case, nor any other published appellate opinion in Wisconsin, deals with the question presented here: whether one arbitrator's decision can have preclusive effect on the ability of a second arbitrator to make certain decisions.

In order to make that determination, we must consider the policies which underlie arbitration. It is an informal process, where the parties have bargained to have a decision maker who is not restricted by the formalistic rules that govern courtroom proceedings.

Arbitration is also designed to bring an end to controversy. Employees, unions and employers all rely on the finality of arbitration decisions in ordering their affairs. If identical claims, or identical issues which the arbitrator necessarily decides, can become the subject of repetitive arbitrations between the same parties simply by resubmitting the controversy to a new arbitrator, a "final and binding" arbitration will never occur. Furthermore, arbitration is based on the agreement of the parties involved to submit certain claims and issues to arbitration. On the other hand, preclusion doctrines may be less suited to the informality of the arbitration process. *See International Chemical Workers Union Local No. 189 v. Purex Corp.*, 427 F. Supp. 338 (D. Ct. App. Neb. 1977). Courts in other jurisdictions that have considered whether one arbitrator's decision can have a preclusive effect on the ability of a second arbitrator to make certain decisions have concluded that in certain circumstances the preclusion doctrines may be applied. *See Bradford Area School Dist. v. Bradford Area Educ. Ass'n*, 663 A.2d 862, 865 (Pa. 1995); *Todd Shipyards Corp. v. Industrial Union of Marine and Shipbuilding Workers of America, Local 15 AFL-CIO*, 242 F. Supp. 606, 612 (D. Ct. N.J. 1965) (applying preclusion doctrine); *Avco Corp. v. Local Union #787 of Int'l Union, United Automobile, Aerospace and Agric. Implement Workers of America, et al.*, 459 F.2d 968, 973 (3rd Cir. 1972); *International Chemical Workers Union Local No. 189*, 427 F. Supp. at 339 (preclusion doctrines not applied).

On balance, we conclude that the policies underlying arbitration, its consensual, final and binding nature, weigh in favor of allowing the application of preclusion doctrines, to a limited extent. Where, at a

minimum, the claim, or the issue necessarily decided in the first arbitration is the same as in the second arbitration, the parties are the same, the parties have had a full opportunity to argue their respective positions to the first arbitrator and the parties have not agreed to re-submit the claim or the issue necessarily decided in the first arbitration to a second arbitration, then, the preclusion doctrines may be applied by an arbitrator or by a reviewing court.

In the case at hand, the employer, the union and the grievant were all the same in the Michelstetter arbitration as in the Rice arbitration. However, the claim for which the Union sought arbitration from Michelstetter, that Lee's termination violated the Agreement, could not have been decided by Rice, because it was outside of his submission. Therefore, we hold that claim preclusion provides no basis for reversing Michelstetter's decision.

However, whether Lee was required to provide the County with a release to work from his doctor before he could be entitled to return to work, is an issue that was necessarily decided in the Rice arbitration. Rice concluded the County acted within the authority delegated to it in § 13.03(a)3 of the Agreement by refusing to return Lee to work and placing him on disability leave because Lee had not provided a release from his doctor. In sharp contrast, Michelstetter completely "excused" Lee from providing what Rice concluded was required under § 13.03(a)3.

Once the release by Lee's physician was provided, its effect on the rights of the parties could properly come solely within the purview of Michelstetter because Rice opined that he did not consider the sufficiency of Dr. Woodford's release. However, for the

period of time prior to November 18, 1992, the date on which Lee provided the release to work, the issue the two arbitrators considered was the same: Whether § 13.03(a)3 of the Agreement required Lee to provide the County with a release to work from his doctor before he could claim an entitlement to return to work.

Here, the parties are the same, the grievant is the same, and whether there was a legal obligation to provide the release is the same issue which was necessarily decided in the first arbitration. There is no evidence in the record that any party lacked a full opportunity to argue its position to Rice, or that the County agreed to resubmit the issue of Lee's obligations under § 13.03(a)3 of the Agreement to further arbitration. Therefore, if we were to conclude that Michelstetter were free to re-decide this issue, the arbitration award of Rice would not be final and binding and Michelstetter would be permitted to decide an issue that was not arbitrable before him. *See Joint School Dist. No. 10*, 78 Wis. 2d at 101-02, 253 N.W.2d at 540. Therefore, we conclude that issue preclusion bars Michelstetter's reinterpretation of Lee's obligation under § 13.03(a)3.

### 2. Contract Interpretation.

The County also asserts that the arbitrator changed the terms[3] of the Agreement by finding that the just cause provision for discharge contained in § 5.05 of the Agreement applied to an employee who did not return to work after the maximum eighteen months of disability layoff. And, it contends that the

---

[3] Arguments that Michelstetter changed the terms of the agreement, exceeded his authority, and exceeded his power are all different ways of making the same argument.

remedy chosen, reinstatement with lost wages and benefits from December 9, 1991, is a revision of the Agreement because it is undisputed that Lee did not comply with the Agreement by providing a release to work from his doctor, until November 18, 1992, and even that release was conditional.

The supreme court's acceptance of the Steelworker's Trilogy in *Dehnart v. Waukesha Brewing Co.*, 17 Wis. 2d 44, 115 N.W.2d 490 (1962), evinces a policy of limited judicial review in cases involving arbitration awards in labor contract disputes. *Nicolet High School Dist. v. Nicolet Educ. Ass'n*, 118 Wis. 2d 707, 712, 348 N.W.2d 175, 178 (1984). The function of our review is to be sure that the parties to the Agreement receive that for which they bargained. *Id.* In order to accomplish this, we examine the award to determine whether it amends the Agreement by substituting the arbitrator's discretion for rights reserved to one of the parties under the Agreement, or whether it projects the arbitrator's own brand of justice rather than reflecting the terms of the collective bargaining agreement. *City of Milwaukee v. Milwaukee Police Ass'n*, 97 Wis. 2d 15, 26, 292 N.W.2d 841, 845 (1980). In reviewing arbitration awards, we follow the statutory standards listed in §§ 788.10 and 788.11, STATS., and the standards developed at common law.

We disagree with the County's position that Michelstetter's interpretation of the Agreement to include a just cause obligation in the operation of the disability layoff provision altered the Agreement. The Agreement did not state what would happen to an employee who was still on disability layoff at the end of eighteen months. The parties had not bargained for a

provision that said the employee would be automatically terminated.

A collective bargaining agreement usually does not expressly state how every imaginable labor controversy which may arise during the term of the agreement is to be resolved. Often those disputes are resolved through arbitration, wherein the arbitrator interprets the labor contract. Construction of an ambiguous contract provision is not modification or alteration of the agreement and does not exceed the authority of the arbitrator. *City of Oshkosh v. Oshkosh Public Library Clerical and Maintenance Employees,* 99 Wis. 2d 95, 104, 299 N.W.2d 210, 215 (1980).

Michelstetter determined the County did not have just cause for termination because when the release to work from Lee's doctor was provided to the County on November 18, 1992, the County took no steps to clarify its terms or to obtain its own examination. He found that the County had "no legitimate basis" to refuse Dr. Woodford's release and concluded that the termination was motivated by concerns for Lee's pre-existing disability. Therefore, because the Agreement was silent, Michelstetter was within the scope of his authority when he interpreted this silence as requiring just cause for termination after eighteen months of disability layoff. *See id.*

However, that determination does not fully answer the question of whether Michelstetter exceeded his authority under the Agreement because the Agreement did specifically reserve to the County the right to be provided with a release for work from Lee's doctor, once a leave of absence under § 13 had begun. *See Nicolet High School Dist.*, 118 Wis. 2d at 714, 348

N.W.2d at 178. However, once Lee provided Dr. Woodford's release, the ball was in the County's court. It could have reinstated Lee;[4] asked for clarification of Dr. Woodford's release, if it thought it was conditioned in an unacceptable way; or gotten another opinion from the physician of its choice. But the County did nothing. The Agreement is silent about what happens when an employee on disability layoff provides a release and the County neither accepts it, nor obtains an assessment by a physician of its choosing. Therefore, we conclude Michelstetter's conclusion, as applied subsequent to November 18, 1992,[5] that Lee was excused from his obligation under § 13.03(a)3 of the Agreement because of the County's inaction, involves the interpretation of an ambiguous contract provision and was well within the scope of his authority. Accordingly, we affirm that portion of his decision and the make whole remedy he fashioned which relates to it.

### 3. ADA Concerns.

The County also contends Michelstetter exceeded his authority because he likened Lee's grievance to a claim a handicapped person could make under the

[4] We do not consider the County's offer of reinstatement conditioned on Lee dropping a pending grievance as sufficient under the contract. The contract granted no such right to the County, and the arbitrator's determination that such offer was insufficient is well within his scope of authority.

[5] The County also argues that Michelstetter interpreted a contract which preceded the Agreement under which he was empaneled to arbitrate, and by so doing he exceeded his authority. However, because the relief provided by this decision is broader in scope than the relief which could be provided if we agreed with the County's position on this issue, we do not address it.

Americans with Disabilities Act. It argues that the contract language covered the dispute; and therefore, the ADA had no role to play in the arbitration proceedings. We do not understand Michelstetter's discussion of the ADA as the basis for his decision, but merely as reference to an area of law where an employer is not free to make decisions based on a perception of what tasks an employee can perform, rather than on the actual abilities of the employee. Therefore, we conclude that Michelstetter did not act in excess of his authority because he mentioned the ADA.

**Frivolous Appeal.**

The Union has moved this court, pursuant to § 809.25(3), STATS., for attorney fees and costs, contending that the County's appeal is frivolous. Section 809.25(3) provides in relevant part:

> (a) If an appeal or cross-appeal is found to be frivolous by the court, the court shall award to the successful party costs, fees and reasonable attorney fees under this section.
>
> . . . .
>
> (c) In order to find an appeal or cross-appeal to be frivolous under par. (a), the court must find one or more of the following:
> 1. The appeal or cross-appeal was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.
> 2. The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

In support of its motion, the Union offers its conclusions such as,

> Those attorneys had to know that the arguments they have made here are without a reasonable basis in fact or law, and that this would be apparent to anyone who read the collective bargaining agreements that Arbitrator Michelstetter had been asked to interpret and apply, to anyone who reviewed the stipulations that the County itself had made regarding the issues before the Arbitrator and to anyone who actually read the Arbitration Award.

It also asserts that because the trial court found no merit to the County's motions to vacate or modify, the appeal is frivolous.

■ The Union refers to no factual findings from which this court could determine that the County proceeded in bad faith, or that its sole motive in appealing was to harass or maliciously injure the Union or Lee. Relevant case law requires this court to have facts before it sufficient to determine the County's intent, as a matter of law, before a decision under § 809.25(3)(c)1, STATS., can be made. *Tomah Mauston Broadcasting Co. v. Eklund*, 143 Wis. 2d 648, 659, 422 N.W.2d 169, 173 (Ct. App. 1988).

We could conclude that we cannot determine on this record, as a matter of law, that the appeal was without a reasonable basis in law or equity or that it was proceeded upon in bad faith solely to harass or maliciously injure the Union or Lee. *J.J. Andrews, Inc. v. Midland*, 164 Wis. 2d 215, 225-26, 474 N.W.2d 756, 760 (Ct. App. 1991). And, our decision, which is grounded in the case law defining the scope of an arbitrator's authority, also precludes the conclusion that

the appeal was frivolous. Therefore, we deny the Union's motion.

## CONCLUSION

In conclusion, we affirm the order of the circuit court as it relates to Michelstetter's award from November 18, 1992 to the date of Lee's reinstatement. We reverse the order and vacate the award for that period of time prior to November 18, 1992. We deny the Union's motion to find the County's appeal frivolous. And in light of our decisions set forth above, we award no costs to either party.

*By the Court.*—Order affirmed in part and reversed in part.

VERGERONT, J. *(concurring)*. I write separately on the issue of the application of issue preclusion to this case. I agree with the majority opinion that an arbitrator's decision on a claim or an issue may have a preclusive effect on the ability of a second arbitrator to decide that claim or issue in limited circumstances. I also agree that it is appropriate to apply issue preclusion in this case. I write separately because the opinion does not mention, in analyzing the policy factors weighing for and against the application of preclusion doctrines, the general rule that there is a broad presumption of arbitrability in determining whether a grievance is subject to arbitration under a contract. *See City of Milwaukee v. Milwaukee Police Assoc.*, 97 Wis. 2d 15, 20, 292 N.W.2d 841, 844 (1980). Doubts about whether an arbitration clause covers a particular grievance are to be resolved in favor of coverage. *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 583 (1960). Courts in at least two other jurisdictions have concluded that this

general policy favoring arbitrability is a factor to be weighed in deciding whether a preclusion doctrine should bar submission of a grievance to arbitration. *See International Chemical Workers Union Local No. 189 v. Purex Corp.*, 427 F. Supp. 338, 339 (D. Neb. 1977); *Todd Shipyards Corp. v. Industrial Union of Marine and Shipbuilding Workers of America, Local 15, AFL-CIO*, 242 F. Supp. 606, 610-11 (D.N.J. 1965). Preclusion doctrines may work against the general rule favoring arbitrability. Therefore, I would conclude that the question whether one arbitrator's decision can have a preclusive effect in a second arbitration must be carefully considered on a case-by-case basis in a manner that does not thwart the general rule favoring arbitrability.

I am authorized to state that Presiding Judge Charles P. Dykman joins this concurring opinion.